## GOMPERS *v.* UNITED STATES.

ERROR TO, APPEAL FROM AND ON PETITION FOR CERTIORARI
TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

Nos. 640, 574.  Argued January 7, 8, 1914; restored to docket for reargu-
ment April 6, 1914; reargued April 20, 21, 1914.—Decided May 11, 1914.

While this court cannot review by appeal or writ of error a judg-
ment of the Court of Appeals of the District of Columbia punishing
for contempt it may grant a writ of certiorari to review the same.
Where two parties petition for writs of certiorari to review the same
judgment, but the entire matter can be disposed of on one petition,
the other will be denied.
Where the statute of limitations was pleaded, and, after a decision that
it was inapplicable, one general exception was presented on his behalf
in that regard, the rights of the defendant are sufficiently preserved.

The provision in Rev. Stat., § 1044, that no person shall be prosecuted for an offense not capital unless the indictment is found or information instituted within three years after commission of the offense, applies to acts of contempt not committed in the presence of the court.

Provisions of the Constitution of the United States are not mathematical formulas having their essence in their form, but are organic living institutions transplanted from English soil. Their significance is not to be gathered simply from the words and a dictionary but by considering their origin and the line of their growth.

Contempts are none the less offenses because trial by jury does not extend to them as a matter of constitutional right.

The substantive portion of § 1044, Rev. Stat., is that no person shall be tried for any offense not capital except within the specified time, and the reference to form of procedure by indictment or information does not take contempts out of the statute because the procedure is by other methods than indictment or information.

*Quære*, whether an indictment will lie for a contempt of a court of the United States.

In dealing with the punishment of crime, some rule as to limitations should be laid down, if not by Congress by this court.

As the power to punish for contempt has some limit, this court regards that limit to have been established as three years by the policy of the law, if not by statute, by analogy. *Adams* v. *Wood*, 2 Cranch, 336.

40. App. D. C. 293, reversed.

THE facts, which involve the construction of § 1044, Rev. Stat., and its application to past acts of contempt, are stated in the opinion.

*Mr. Alton B. Parker* and *Mr. Jackson H. Ralston*, with whom *Mr. William E. Richardson* was on the brief, for plaintiffs in error and appellants.

*Mr. J. J. Darlington* and *Mr. Daniel Davenport*, with whom *Mr. James M. Beck* was on the brief, for the United States.

MR. JUSTICE HOLMES delivered the opinion of the court.

These are proceedings for alleged criminal contempts in the matter that was before this court in *Gompers* v. *Bucks*

*Stove & Range Co.*, 221 U. S. 418. In that case the proceedings instituted by the Bucks Stove & Range Company to punish the petitioners were ordered to be dismissed, but without prejudice to the power of the Supreme Court of the District to punish contempt, if any, committed against it. The decision was rendered on May 15, 1911, and the next day the Supreme Court of the District appointed a committee to inquire whether there was reasonable cause to believe the plaintiffs in error guilty, in wilfully violating an injunction issued by that court on December 18, 1907, and, if yea, to present and prosecute charges to that effect. The inquiry was directed solely with a view to punishment for past acts, not to secure obedience for the future; and to avoid repetition it will be understood that all that we have to say concerns proceedings of this sort only, and further, only proceedings for such contempt not committed in the presence of the court.

The committee, on June 26, 1911, reported and charged that the parties severally were guilty of specified acts in violation of the injunction, being the same acts of which they had been found guilty by the Supreme Court in the former case. Rules to show cause were issued on the same day. The defendants pleaded the Statute of Limitations, Rev. Stat., § 1044, as to most of the charges, and not guilty. There was a trial, the Statute of Limitations was held inapplicable and the defendants were found guilty and sentenced to imprisonment for terms of different lengths, subject to exceptions which by agreement were embodied in a single bill. The Court of Appeals reduced the sentences to imprisonment for thirty days in the case of Gompers and fines of $500 for each of the other two. 40 App. D. C. 293. The defendants brought a writ of error and an appeal to this court and also petitioned for a writ of certiorari. Of course an appeal does not lie, nor does a writ of error, but the writ of certiorari is granted.

The judges of the Supreme Court also petitioned for a writ of certiorari, but as the case will be disposed of on the first mentioned petition, the other will be denied.

The injunction, subsequently held too broad; not only forbade the defendants to combine to obstruct the business of the Bucks Stove and Range Company, or to declare or threaten any boycott against it (such a boycott already having been declared), but also to publish any statement calling attention of any body to any such boycott, or any statement of like effect, tending to any injury of the Company's business. This decree, although made on December 18, did not become operative until December 23, 1907. Before going to the Court of Appeals the injunction in substantially the same form was made permanent on March 23, 1908. It may be assumed for the purposes of our decision that the evidence not only warranted but required a finding that the defendants were guilty of some at least of the violations of this decree that were charged against them, and so we come at once to consider the Statute of Limitations, which is their only real defence. A preliminary objection was urged, to be sure, that the question of the validity of that defence was not reserved, but there is nothing in it. The bar was pleaded; there was a motion to dismiss on that ground for want of a replication, there was a decision that the statute did not apply to contempts, and the counsel for the plaintiffs in error stated at the trial that there was one general exception presented on their behalf with regard to that. We cannot doubt that it was perfectly understood, or that the record shows, that the plaintiffs in error preserved all their rights.

The statute provides that 'no person shall be prosecuted, tried, or punished for any offense, not capital, except  .   .   .  , unless the indictment is found, or the information is instituted within three years next after such offense shall have been committed.' Rev. Stat., § 1044. Act of April 13, 1876, c. 56, 19 Stat. 32. The plaintiffs in

error treat these proceedings as having begun on May 16, 1911, when the Supreme Court directed an inquiry. They certainly did not begin before that date; so that, if the Statute applies, contempts prior to May 16, 1908, would be barred. It is argued with force that the inquiry was directed only to breaches of the preliminary injunction, which expired by its own terms upon the making of the final decree on March 23, 1908, and that therefore everything legitimately before the court, happened more than three years before. But as the report mentioned the final decree and charged a few acts later than March 23, though mostly rather unimportant, and as the order to show cause referred to a violation of the injunctions, in the plural, it perhaps would savor of a technicality that we should be loath to apply on either side, if we did not deal with all that is charged.

The charges against Gompers are: 1, hurrying the publication of the January number of the American Federationist and distributing many copies after the injunction was known and before it went into effect, in which number the Bucks Stove and Range Company was included in the 'We don't patronize' list; 2, circulating other copies in January, 1908; 3, on and after December 23, 1907, circulating another document to the like effect with comments, some of which were lawful criticism but others of which suggested that the injunction left the members of labor organizations free to continue their boycott; 4, publishing in February, 1908, a copy of the decree with the suggestion that those who violated the injunction outside of the District could not be punished unless they came within it; 5, in January and February, 1908, publishing in conjunction with the other defendants a paper appealing for financial aid, commenting on the injunction as invading the liberty of the press and free speech and reprinting the before-mentioned comments and suggestions; 6, in March, 1908, again suggesting that no law compelled the purchase

of a Bucks stove; 7, in April, 1908, after the final decree, reiterating the same suggestion in the American Federationist; 8, in April, 1908, repeating similar suggestions by transparent innuendo in a public address; 9, again repeating them in another address, on or about May 1; 10, and again in the July issue of the American Federationist; 11, publishing in the September Federationist an editorial characterizing the injunction as an invasion of constitutional freedom, (which hardly seems to exceed lawful comment unless on the ground that the case was not finished, although mistaken in its law); 12, in a report published after September 9, 1908, saying that if the Executive Council of the Federation of Labor obeyed the injunction they could not report the state of the case to the Denver Convention, and that they did not see how they could refuse to give an account of their doings; 13, on September 29, 1908, saying in a public address that the injunction forbade him to discuss the case, but that he must, (seemingly not going beyond that declaration); 14, on October 26, 1908, recurring in a single phrase in an address, to his old suggestion that no law compelled his hearers to buy a Bucks stove; 15, in November, 1908, in an address which he caused to be published in the Federationist in January, 1909, again referring to the injunction, mentioning his past advice and suggestions and that he had been called on to show cause why he should not be adjudged guilty of contempt, (in the former proceeding), and asking how he could have done otherwise; and finally, 16, in a report made in November, 1909, referring to the Judge as so far having transcended his authority that even judges of the Court of Appeals have felt called upon to criticize his action, and saying that in such circumstances it is the duty of the citizens to refuse obedience and to take whatever consequences may ensue. The charges against Mitchell and Morrison are mainly for having taken part in some of the above mentioned publications, but need not

be stated particularly, as all the acts of any substance in Mitchell's case and all in that of Morrison were more than three years old when these proceedings began.

The boycott against the Company was not called off until July 19 to 29, 1910, and it is argued that even if the statute applies the conspiracy was continuing until that date, *United States* v. *Kissel*, 218 U. S. 601, 607, and therefore that the Statute did not begin to run until then. But this is not an indictment for conspiracy, it is a charge of specific acts in disobedience of an injunction. The acts are not charged as evidence but as substantive offenses; each of them, so far as it was a contempt, was punishable as such, and was charged as such, and therefore each must be judged by itself; and so we come to what, as we already have intimated, is the real question in the case.

It is urged in the first place that contempts cannot be crimes, because, although punishable by imprisonment and therefore, if crimes, infamous, they are not within the protection of the Constitution and the amendments giving a right to trial by jury &c. to persons charged with such crimes. But the provisions of the Constitution are not mathematical formulas having their essence in their form; they are organic living institutions transplanted from English soil. Their significance is vital not formal; it is to be gathered not simply by taking the words and a dictionary, but by considering their origin and the line of their growth. *Robertson* v. *Baldwin*, 165 U. S. 275, 281, 282. It does not follow that contempts of the class under consideration are not crimes, or rather, in the language of the statute, offenses, because trial by jury as it has been gradually worked out and fought out has been thought not to extend to them as a matter of constitutional right. These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech. So truly are

they crimes that it seems to be proved that in the early law they were punished only by the usual criminal procedure, 3 Transactions of the Royal Historical Society, N. S. p. 147 (1885), and that at least in England it seems that they still may be and preferably are tried in that way. See 7 Halsbury, Laws of England, 280, *sub v.* Contempt of Court (604); *Re Clements* v. *Erlanger,* 46 L. J., N. S., pp. 375, 383. *Matter of Macleod,* 6 Jur. 461. *Schreiber* v. *Lateward,* 2 Dick. 592; *Wellesley's Case,* 2 Russ. & M. 639, 667. *In re Pollard,* L. R. 2 P. C. 106, 120. *Ex parte Kearney,* 7 Wheat. 38, 43. *Bessette* v. *W. B. Conkey Co.,* 194 U. S. 324, 328, 331, 332. *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418, 441.

We come then to the construction of the Statute. It has been assumed that the concluding words 'unless the indictment is found or the information is instituted within three years' limit the offences given the benefit of the act to those usually prosecuted in that way, and the counsel for the petitioners were at some pains to argue that the charges of the committee amounted to an information; a matter that opens vistas of antiquarian speculation. But this question is not one to be answered by refinements and curious inquiries.—In our opinion the proper interpretation of the Statute begins with the substantive not with the adjective part. The substantive portion of the section is that no person shall be tried for any offence not capital except within a certain time. Those words are of universal scope. What follows is a natural way of expressing that the proceedings must be begun within 3 years; indictment and information being the usual modes by which they are begun and very likely no other having occurred to those who drew the law. But it seems to us plain that the dominant words of the act are 'no person shall be prosecuted, tried, or punished for any offence not capital' unless.—

No reason has been suggested to us for not giving to the

statute its natural scope. The English courts seem to think it wise, even when there is much seeming reason for the exercise of a summary power, to leave the punishment of this class of contempts to the regular and formal criminal process. *Matter of Macleod*, 6 Jur. 461. Maintenance of their authority does not often make it really necessary for courts to exert their own power to punish, as is shown by the English practice in more violent days than these, and there is no more reason for prolonging the period of liability when they see fit to do so than in the case where the same offence is proceeded against in the common way. Indeed the punishment of these offences peculiarly needs to be speedy if it is to occur. The argument loses little of its force if it should be determined hereafter, a matter on which we express no opinion, that in the present state of the law an indictment would not lie for a contempt of a court of the United States.

Even if the statute does not cover the case by its express words, as we think it does, still, in dealing with the punishment of crime a rule should be laid down, if not by Congress by this court. The power to punish for contempt must have some limit in time, and in defining that limit we should have regard to what has been the policy of the law from the foundation of the Government. By analogy if not by enactment the limit is three years. The case cannot be concluded otherwise so well as in the language of Chief Justice Marshall in a case where the statute was held applicable to an action of debt for a penalty. *Adams* v. *Woods*, 2 Cranch, 336, 340, 341, 342: "It is contended that the prosecutions limited by this law, are those only which are carried on in the form of an indictment or information, and not those where the penalty is demanded by an action of debt.—But if the words of the act be examined they will be found to apply, not to any particular mode of proceeding, but generally to any prosecution, trial or punishment for the offence. It is not de-

clared that no indictment shall be found . . . But it is declared that 'No person shall be prosecuted, tried or punished' . . . —In expounding this law, it deserves some consideration, that if it does not limit actions of debt for penalties, those actions might, in many cases, be brought at any distance of time. This would be utterly repugnant to the genius of our laws. In a country where not even treason can be prosecuted after a lapse of three years, it could scarcely be supposed that an individual would remain forever liable to a pecuniary forfeiture." The result is that the judgments, based as they are mainly upon offences that could not be taken into consideration, must be reversed.

*Judgments reversed.*

MR. JUSTICE VAN DEVANTER and MR. JUSTICE PITNEY dissent.