**T. F. HART INV. CO. v. GREAT EAST-
ERN OIL CO. et al.**

No. 398.

District Court, E. D. Texas,
Tyler Division.

June 6, 1939.

Joseph W. Bailey, Jr., of Dallas, Tex.,
for the bill.

Saye & Saye, of Longview, Tex., op-
posed.

ATWELL, District Judge.

This application in contempt recites
that, upon the institution of the suit on
March 26th, 1932, J. S. Cruse and Sloan
Simpson, were appointed receivers, "to
take, hold, protect, and manage the prop-
erty of the Great Eastern Oil Company,
under the jurisdiction of this court, and in
accordance with such orders as were there-
after entered." That on June 8, 1932,
Cruse was succeeded by Earl Greer, and
about January 1st, 1933, Greer resigned,
and Simpson remained as sole receiver un-
til July 8, 1935, when he was succeeded by
Joseph W. Bailey, Jr., who discovered the
alleged crookedness.

Among the properties taken into pos-
session by the receivers were two produc-
ing oil and gas wells in Rusk County,
Texas. During the years 1933, 1934, and
1935, and up to the present time, the re-
ceivers were the owners of one-fourth of
seven-eighths working interest in the de-
scribed tracts.

That during the said years, and up to
this time, the receivers were charged with
the operation of the entire estate. That
they did so operate the same during the
said three years, producing oil therefrom,
and delivered the same into the pipe lines,
free of charge as to all owners of the

royalty, and with a proportionate charge for the operation as to the joint owners of the seven-eighths working interest.

One McKenzie was employed to actually operate the wells, and to produce the oil therefrom, and to deliver the same into the pipe line, and he was instructed to produce from said lease in accordance with the regulations of the Railroad Commission of Texas, whether valid, or invalid, and to demand and receive receipts for all of the oil delivered into the pipe line, and to actually deliver such receipts to your receiver, and the other owners of the working interest.

That during all of the said period, certain receipts were delivered to your receivers, and the co-owners, representing the "allowable" permitted under the orders of the Commission, and such oil had been delivered to the Apex Pipe Line Company, up to November 1st, 1933, and thereafter, to the DeSoto Crude Oil Purchasing Corporation of Louisiana, and of Delaware. That the Apex Pipe Line Company, and the Louisiana DeSoto Crude Oil Purchasing Corporation were later dissolved. That the Apex Pipe Line Company's stock was owned by one Crittenden, and one Grogan, save for "a few trifling shares" belonging to their employees. That said pipe line made a connection to the lease in the spring, or, early summer of 1933. That in the fall of 1933, the said Grogan and Crittenden incorporated the DeSoto Crude Oil Purchasing Corporation and transferred the assets of the Apex to the said DeSoto. That they owned all of the stock of the DeSoto. That Grogan was President of the DeSoto. That the assets of the Apex were transferred to the DeSoto, "with knowledge of their prior illegal abstraction of oil from the leases in question." That J. E. Marshall was an official of the Apex, and, likewise, an official of the DeSoto, and that the lease man, and employees of the corporations were the same.

The DeSoto acquired the right to take oil from the lease under the division order signed by its predecessor, the Apex. That the DeSoto was but another "corporate guise of Grogan and Crittenden."

"That the said conspiracy hereinafter set out, if previously framed, was continued, and the proceeds of the oil previously illegally run, if any, passed into the coffers of the DeSoto, with knowledge of the said DeSoto, and its officers and directors, and that while the oil had been sold, the cash proceeds remained in the possession of the DeSoto as cash, or, property, up to the time of the transfer to the Delaware DeSoto."

"That the Delaware DeSoto was formed and created for the purpose of carrying out a plan, scheme, and conspiracy of stealing the oil and preventing the discovery of said plan, scheme, and conspiracy. That all of the books, records, data, memoranda, and files, were constructed and kept as a purported plan and scheme to so unlawfully take and steal oil from said leasehold estate, and conceal the discovery of such plan, and were taken over by the respondent corporation (Delaware DeSoto) so formed with the knowledge of all the facts, and with the express intent and purpose of using the same in conjunction with its continuing false statements and representations to your petitioner, for the purpose of protecting it in retaining either the oil so unlawfully run, or, the proceeds of such oil so run, which it so acquired and retained."

That the three corporations, in turn, paid regularly the amount of money shown to be due upon the receipts executed and delivered to the receivers for the "allowable" oil, and represented "expressly and impliedly," that that was all of the oil that had been delivered to them during all of said period, "and continued to do so until about November 1st, 1938. That this representation was false and untrue, and was a part of the original conspiracy."

"That said conspiracy consisted of two parts, first, the conspiracy to produce the oil * * *, without the knowledge of your receiver; and, second, to hide, by false entries on their books and false statements to the receiver, the fact that said oil was produced and delivered * * *; and thus, and thereby, to defraud your receiver of said oil which he was entitled to receive."

That, after the first part of the conspiracy was completed, and the oil produced and converted, Grogan, Crittenden, Marshall, and DeSoto of Louisiana, continued to hide and conceal the production and conversion; and to carry out said conspiracy, and for the purpose of further concealing, in July, 1935, organized the new DeSoto of Delaware, and transferred all of the property of the DeSoto of Louisiana to the DeSoto of Delaware, with the same stockholders, officers, and em-

ployees who carried on the same business in the same manner; and said Delaware DeSoto continued operations under the conspiracy "in that they concealed, or, attempted to conceal, the conversion of said oil and the right of your receiver to the proceeds thereof, and made false entries on their own books and false reports to the complainants each month, up to November 1st, 1938, of the amount due the receiver."

On September 7th, 1938, the receiver got information with reference to this alleged conspiracy that "had been entered into in the summer or fall of 1933." That, in the exercise of reasonable care, it could not have been known until that date.

That in the commission of the conspiracy, between the summer of 1933, and the last of February, 1935, one hundred thousand barrels of crude oil were secretly, and fraudulently, taken from the said leases, and that the said oil was worth $1.35 per barrel.

The prayer asks for notice to the De-Soto of Delaware, and Grogan, Crittenden, and Marshall, requiring them to show cause, "why they should not be held in contempt of court, unless they should be willing to pay to your receiver, $135,000.00. Or, in the alternative, that they should be held in contempt and fined such fine as the court may deem proper, and order held in the custody of the United States marshal, or, in jail, until such time as they purge themselves of the contempt heretofore committed."

No one is before the court, except the DeSoto of Delaware, and that respondent protests that the application fails to show any facts constituting contempt. Second, that the alleged acts of contempt pleaded by the applicant, were more than one year before the institution of the application, and the same is barred by the statute of limitation in U.S.C.A., Title 28, Sec. 390. Third, that the alleged acts "occurred, if at all, more than three years before the action was instituted, and the action is barred by the statute of limitation. U.S.C.A., Title 18, Sec. 582."

After these preliminary defenses, it is pleaded that there was no excess run of oil, and other matters unnecessary to mention at this time, save that denials were made as to the vicious allegations.

■ The power of the national courts to punish for contempt, is limited to those cases where there has been misbehavior of a person in the presence of the court, or, so near thereto as to obstruct the administration of justice; or, where there has been misbehavior of any officer of the court in his official transaction; or, where there has been any disobedience, or resistence by any officer, party, juror, witness, or, other person, to any lawful writ, process, order, rule, decree, or, command of the court. Ex parte Robinson, 86 U.S. 505, 19 Wall. 505, 22 L.Ed. 205; Wilson v. United States, 8 Cir., 26 F.2d 215; Morgan v. United States, 8 Cir., 95 F.2d 830; Gompers v. United States, 233 U.S. 604, 34 S.Ct. 693, 58 L.Ed. 1115, Ann.Cas. 1915D, 1044.

■ The most that can be said of the charge made against the respondent, is that it is officered, and its stock is held, by the same persons who were officers of the Apex, and the Louisiana DeSoto, and that what the Apex and the Louisiana DeSoto stole from the receivers passed into the respondent's hands, or, that the money, or, property which were received for that which was stolen, passed into its hands, with knowledge that it had been originally stolen.

There is not sufficient allegation in the bill to come within either of the three classes of contempts. No misbehavior is alleged in the presence of the court, nor has there been any misbehavior by an officer of the court, nor is there any disobedience or resistence by any officer, party, juror, witness, or, other person, to any lawful writ, process, order, rule, decree, or, command, of the court.

■ The wrong pleaded, is a simple theft, and a conspiracy to conceal the theft. It would be a long stretch of the judicial arm to summarily grab a citizen who had stolen some property that was being held by an officer of the court, and bring him into its presence for punishment. No such power is committed to, nor inherent in a national court.

Morgan v. United States, 8 Cir., 95 F. 2d 830, reversed a criminal contempt punishment which was based upon the procuring from a trustee in bankruptcy, certain moneys of an estate by means of deceit, and false representations made to him, and to the referee. That court held that such a proceeding was not punishable as a contempt, because the offense was against the peace and dignity of the government, rather than a disobedience to

any particular injunction, or, command of a court.

Again, the act of taking the oil—the theft of it—was completed the last of February, 1935. What has been done since then is to continue to conceal that theft, and the conspiracy has been to make that concealment efficacious.

██ Section 582, of Title 18 U.S.C.A., provides, that "No person shall be prosecuted, tried, or punished for any offense, not capital, except as provided in section 584 of this title, unless the indictment is found, or the information is instituted, within three years next after such offense shall have been committed." This proceeding was instituted in September, 1938; more than three years after the completion of the theft. That a continuing conspiracy is charged for the purpose of concealing that theft, is no more than saying that the offender did not expose his guilt. Such concealment does not toll the running of the statute.

██ In Gompers v. United States, 233 U. S. 604, 34 S.Ct. 693, 696, 58 L.Ed. 1115, Ann.Cas.1915D, 1044, the Supreme Court held that this three-year statute applied to criminal contempts. It definitely stated that: "Even if the statute does not cover the case by its express words, as we think it does, still, in dealing with the punishment of crime a rule should be laid down, if not by Congress, by this court. The power to punish for contempt must have some limit in time, and in defining that limit we should have regard to what has been the policy of the law from the foundation of the government. By analogy, if not by enactment, the limit is three years."

I am not unmindful of the two sorts of contempt, nor of the fact that this proceeding is brought by a receiver, rather than by the United States. The fact remains, though, that condign punishment is sought, if the $135,000 is not paid. It is more humane to take the view that Judge Holmes takes in the Gompers case than to ignore the quieting effect of the lapse of time. To seek to place in different classes punishments by courts for alleged contempts of their authority, and to permit such punishments to be classified in a way that will bar some and not others, would make the law uncertain.

This bill seeks to require the payment of a large sum of money by commitment to jail. That the commitment is to follow refusal to pay, makes it none the less summary punishment.

The receiver thinks that since the proceeding is by him rather than by a United States officer, and since he could institute an independent civil suit for conversion and an accounting and that since to that suit laches would be a defense for the failure to institute within limitation time after the discovery of the conversion, that that measure of limitation, or laches, should control here, rather than the limitation used by the Supreme Court in the Gompers case.

The result of that reasoning is to wipe out the salutary rule laid down in that case. Such a proceeding would make two rules for the same sort of punishment. And the very purpose of the Gompers decision was to fix definitely some period of limitation against punishment for contempts. That rule, applicable to this case, is three years from the time of the commission of the offense. The conspiracy to conceal the offense, is not contemptuous, even if we concede that the taking of the oil was so. The alleged contempt arises out of the theft of the property. The concealment of that theft is shadowy, and may not be measured in any portion of the $135,000 sought. The amount sought is the value of the oil taken. The oil was taken prior to the last of February, 1935. That ended the offense.

I have already indicated that I do not think that that taking was contemptuous, but if it was, punishment for it by this route is, and was, barred before the institution of this rule.

I have not spoken of the one-year statute. It is clearly not applicable. Nor have I called attention to the fact that the respondent now before the court was not even in existence at the time of the completion of the alleged theft.

I think the motion to dismiss should be sustained.