UNITED STATES v. PENDERGAST et al.
No. 5040.

District Court, W. D. Missouri.
Nov. 14, 1940.

594

Richard K. Phelps, Asst. U. S. Atty., of Kansas City, Mo., for plaintiff.

R. R. Brewster and John G. Madden, both of Kansas City, Mo., for Thos. J. Pendergast.

James P. Aylward, Jerome Walsh, and Terrence O'Brien, all of Kansas City, Mo., for Robert Emmett O'Malley.

Forest W. Hanna, of Kansas City, Mo., for A. L. McCormack.

Before STONE, Circuit Judge, and REEVES and OTIS, District Judges.

OTIS, District Judge.

An information charging Thomas J. Pendergast, Robert Emmett· O'Malley and A.

L. McCormack with contempt of this statutory court was filed by the United States Attorney July 13, 1940. A full synopsis of the information is set out in the margin. * It is alleged in the information that the three individuals named had procured from this court a decree in a number of cases involving insurance rates in Missouri and involving the disposition of a huge fund impounded by the court; that they had obtained the decree by the bribery of the superintendent of insurance, one of the litigants, and by representations to the court that a settlement had been honestly arrived at by the parties. It was further of the essence of the information that the named individuals not only deceived and committed a fraud on the court, but that they continued the original deception and fraud by affirmative acts designed to prevent discovery by the court of the truth concerning the settlement.

On August 31, 1940, Pendergast and O'Malley separately filed substantially identical motions to abate and quash the information. On September 3, 1940, McCormack filed a like motion. These motions have been submitted on oral arguments and written briefs and are now to be ruled.

Of the several grounds set out in the motions, three only have been presented in argument. We discuss them.

### Jurisdiction.

1. It is contended that this court "is a statutory tribunal of limited jurisdiction and that it is without jurisdiction in this proceeding." The reasoning of counsel is this:

This three-judge court is a three-judge court of the Central Division of the Western District of Missouri and is "a separate and distinct tribunal" of that division. Steers v. United States, 8 Cir., 297 F. 116, 118. By rule of court made pursuant to statute, 28 U.S.C.A. § 27, Judge Collet now is the federal district judge assigned to the Central Division. Judge Collet, therefore, and he alone, has jurisdiction of offenses committed against any federal district court (three-judge court or otherwise) sitting in and for the Central Division, *provided the offense is an independent proceeding and not incidental to the original litigation pending before the three-judge court.* This contempt proceeding is not incidental to the original litigation pending before the three-judge court.

The reasoning is sound. The last mentioned hypothesis is error. The misbe-

---

* The information sets out that there were filed in the Central Division of the Western District of Missouri on May 25, 1930, cases in equity numbered 270 to 426, seeking injunctions forbidding the superintendent of insurance interfering with certain rates filed by insurance companies. That on July 2, 1930, temporary injunctions were issued. That a custodian was appointed to receive a certain excess of premiums, pending final decision of the cases. That a master was appointed to take and that he proceeded to take testimony. The information sets out that on June 18, 1935, motions for decrees were filed, setting up that settlements had been arrived at in accordance with a stipulation also filed. That on February 1, 1936, the court entered its decree in accordance with the stipulation, distributing approximately $8,000,000 in impounded funds as agreed to by the parties.

The information then charges that the stipulation of settlement and for distribution of funds and the consequent decree were induced corruptly and in contempt of court. That O'Malley conferred with McCormack asking him to confer with one Street, acting for the insurance companies, to get Street to confer with Pendergast about a possible settlement of the insurance litigation. That accordingly Street did confer with Pendergast. That Street told Pendergast he would pay a fee to bring about a settlement. That a fee of $500,000 was agreed upon. That a first installment of $50,000 was paid. That a second installment of $50,000 was paid, of which $22,500 went to McCormack and $22,500 went to O'Malley. That later $330,000 was given by Street to McCormack and by McCormack to Pendergast, Pendergast keeping $250,000 and dividing $80,000 between O'Malley and McCormack. That a final payment of $10,000 was made by Street to McCormack and by McCormack to Pendergast. That the payments were made to buy the influence of Pendergast, to corrupt O'Malley to accept the settlement, and to obtain the decree by fraudulent means.

Finally it is charged in the information that Pendergast, O'Malley and McCormack agreed that, by affirmative acts of concealment, they would prevent discovery by the court of the bribery and fraud which had been committed to obtain the decree and that one or more of the three thereupon and thereafter perpetrated such affirmative acts of concealment which are specifically described.

havior charged against defendants may not constitute contempt (*that is the next question to be considered*), but accepting as true the allegations in the information, it was certainly misbehavior obstructing the administration of justice *in cases pending before this three-judge court.* Its punishment, if the allegations are proved and if contempt is shown, clearly is as incidental *to the cases pending* as interference with the administration of justice in any case is incidental to that case. Any contempt, not committed *in the face of the court,* must be incidental to some case. If the alleged misbehavior was not incidental to the case pending before the three-judge court, to what case was it incidental? The fact that misbehavior may be an independent crime under the laws does not mean, of course, that it may not be, *as contempt,* incidental to some principal case. In re Savin, 131 U. S. 267, 9 S.Ct. 699, 33 L.Ed. 150.

We resolve contention No. 1 against the movants.

### Is Contempt Charged? The "Order and Decorum" Argument.

2. The information in effect charges that the insurance companies, through McCormack, furnished Pendergast with money, which Pendergast used to bribe O'Malley to deceive this court so as to obtain a decree giving money held by the court to the companies. The conspiracy to act and the acts committed (except the final act through counsel) all were beyond the *physical presence of the court.* The second contention is that no act charged against any of defendants was of such a nature as to disturb the "order and decorum" of the court and that only acts of that character (and certain other acts which the alleged misbehavior obviously is not) can constitute contempt.

The whole argument in support of this contention is rooted in a dictum used by the Supreme Court in Ex parte Robinson, 19 Wall. 505, 511, 22 L.Ed. 205. In that case there was a judgment against Robinson, that he had been guilty of contempt, bottomed on "the tone and manner" in which he made certain statements in open court, the statements themselves being not in substance contemptuous. The district judge sought to punish the contemnor by disbarment. The only question determined in the case was that disbarment was not such a punishment as could be imposed for contempt. In an incidental discussion of the statute (now Section 385, Title 28 U.S.C.

A.), the court said (the italics are ours): "It limits the power of these courts in this respect to three classes of cases: 1st, where there has been misbehavior of a person in the presence of the courts, or so near thereto as to obstruct the administration of justice; 2d, where there has been misbehavior of any officer of the courts in his official transactions; and, 3d, where there has been disobedience or resistance by any officer, party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the courts. *As thus seen the power of these courts in the punishments of contempts can only be exercised to insure order and decorum in their presence, to secure faithfulness on the part of their officers in their official transactions, and to enforce obedience to their lawful orders, judgments, and processes."*

The phrase "to insure order and decorum in their presence" in the dictum quoted is seized upon. It is perfectly obvious, however, to one who gives any thought to the matter, that the Supreme Court did not mean to say that the only "misbehavior" referred to in the statute was such as constituted an interference "with order and decorum." Here was intended only *an illustration* of the misbehavior which might be punished as contempt. The reference is to *order and decorum* "in their presence," but the very words of the statute make punishable as contempt misbehavior *not in the presence of the court,* provided it is "so near thereto as to obstruct the administration of justice."

■■■ If any doubt at all could arise from the language of the Supreme Court in Ex parte Robinson, supra, it certainly was entirely dissipated in the later opinion in Toledo Newspaper Co. v. United States, 247 U.S. 402, 38 S.Ct. 560, 62 L.Ed. 1186. It was made perfectly clear by the opinion in that case that contempt was not restricted to interference with "order and decorum." When the opinion is read in connection with the opinion of the district court in the same case (220 F. 458) it is clear that *it is the effect on the administration of justice which is the test of whether misbehavior is contempt.* If the tendency of the misbehavior is to affect the administration of justice, it is contempt, whether it is in the presence of the court or at some point away from the presence of the court, whether it affects the order and decorum of the courtroom or does not affect them.

The Court of Appeals for this circuit in Froelich v. United States, 33 F.2d 660, 663, by its reasoning, entirely disposed of this second contention of defendants. Froelich had written a letter to an attorney in a case in which he reflected upon the integrity of Judge Sanborn, then district judge. The effect of the letter was to induce an affidavit of prejudice. The affidavit of prejudice affected the administration of justice. The act of writing the letter was held to be punishable contempt. The Court of Appeals said: " * * * undoubtedly one who seeks to induce an attorney in a case to file such an affidavit [i.e., an affidavit of prejudice], by laying before him false and malicious statements as to the uprightness and honor of a trial judge, if the result is the filing of an affidavit of bias and prejudice, does obstruct the administration of justice. That obstruction follows from the necessary rearrangement of judicial machinery and possible delays incident to the filing of such an affidavit."

### The Statute of Limitations.

3. The contempt charged was "misbehavior" in the "presence" of the court within the meaning of 28 U.S.C.A. § 385. The misbehavior became effective and was intended to become effective when the court was asked to hand down its decree and when that decree was continued in force by the court. While the most expanded meaning has been given to the word "presence" as used in the statute, no expanded meaning is required here. One who, either by himself or by his agent (perhaps by an agent wholly innocent), obtains a decree by representations he makes or causes to be made in open court, in the very face of the court, of course, acts in the "presence" of the court. It is not needed that the companion words in the statute—"or so near thereto" (i.e., to the presence of the court) "as to obstruct the administration of justice," be regarded. They only emphasize the fact that "presence" is to be broadly interpreted. The misbehavior need not be in the *actual presence*. It is sufficient if it is near enough so as "to obstruct the administration of justice." It is "near enough," although it takes place 500 miles away from the courthouse, if it does "obstruct the administration of justice." A letter mailed in London, addressed to a district judge in Missouri, delivered to him in chambers, falsely charging him with misconduct concerning a pending case, certainly is "misbehavior." It is committed, be-

cause it takes effect, in the "presence" of the court. At any rate it is "so near" to the "presence" as to obstruct the administration of justice. A consideration of a few of the decided cases will illuminate the subject.

In the leading case of In re Savin, supra [131 U.S. 267, 9 S.Ct. 701, 33 L.Ed. 150], the Supreme Court made it clear that "in the presence of the court" did not mean the personal presence of the judges or when court is in session. The contempt in that case was committed by an attempt to induce a witness not to testify. The inducement was in the jury room temporarily used as a witness room. The Supreme Court said that was misbehavior in the "presence of the court." "The court," said the Supreme Court, "is present in every part of the place set apart for its own use, and for the use of its officers, jurors, and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court."

The Ninth Circuit Court of Appeals, in Independent Publishing Co. v. United States, 240 F. 849, 856, said that the publication of an article in a newspaper, copies of which would be seen by jurors sitting in a case in trial and containing an article attacking the character of the defendant then on trial, was contempt committed "in the presence of the court." The Court of Appeals said, "the misbehavior is committed where it takes effect." The court quoted with approval an opinion of the Supreme Court of Georgia, Simpson v. State, 92 Ga. 41, 17 S.E. 984, 22 L.R.A. 248, 44 Am.St. Rep. 75, to the effect that: "The well-established theory of the law is that, where one puts in force an agency for the commission of crime, he, in legal contemplation, accompanies the same to the point where it becomes effectual. * * * So, if a man in the state of South Carolina criminally fires a ball into the state of Georgia, the law regards him as accompanying the ball, and as being represented by it up to the point where it strikes."

See also and particularly Froelich v. United States, supra.

The contempt charged in the information was on account of "misbehavior" in the "presence of the court." The contentions are made, however, (a) that the information shows on its face that the alleged misbehavior was committed more than three years before the information was filed and (b) that the three-year statute of limitations, Title 18 U.S.C.A. § 582, applies to a contempt proceeding of the character

598

here involved. These contentions must be examined.

▇▇ (a) The information charges that the defendants by their, acts of misbehavior procured this court's decree and so obstructed the administration of justice in this court. The information further charges that, to maintain that decree, well within three years before the information was filed, defendants committed certain other *affirmative* acts of concealment. (McCormack, for example, committed perjury to prevent discovery of the truth by this court.)

Counsel point to what they think is an analogy. They say, in effect, if *A* robs a bank, the statute of limitations begins to run from the day the robbery is perpetrated. The fact that he conceals (by not revealing) the robbery does not toll the statute. And that undoubtedly is true, *if the crime was completed when the bank was robbed.*

*A's* crime consists not only of entering a bank with felonious intent, not only of stealing the moneys of the bank, but also of getting away with the loot. (Would anyone suggest that if a three-year period —assuming a three-year statute of limitations—began to run at the moment *A* fled from the bank and before he had disposed of the loot, and if he was not indicted until more than three years after he fled from the bank, the statute would protect him? Certainly not. At least it would not begin to run until the flight was ended and the loot concealed. But suppose the robber hides the loot in a cave and then maintains a guard outside the cave. That is *active* concealment, a continuance [not by any mere failure to reveal the crime] of the crime. The statute will begin to run *when the guard is taken down.)*

In this matter, if there is any applicable statute of limitations, it began to run *only when affirmative acts of concealment finally were discontinued.*

(b) We have seen that the misbehavior alleged was not completed until well within a period of three years before the filing of the information. But suppose that was not the fact, *what authority is there for saying that the three-year statute applies to a contempt proceeding for misbehavior in the presence of the court?*

The language of the three-year statute provides that: "No person shall be prosecuted, tried, or punished for any offense, not capital, except as provided in section 584 of this title, unless the indictment is found, or the information is instituted, within three years next after such offense shall have been committed \* \* \*."

While a most forceful argument can be made that this statute does not apply at all to *any sort of a contempt proceeding* (but only to those criminal prosecutions which are instituted by criminal indictments and criminal informations), that argument must be disregarded since the decision of the Supreme Court in Gompers v. United States, 233 U.S. 604, 605, 34 S.Ct. 693, 58 L.Ed. 1115, Ann.Cas.1915D, 1044. It was held in that case that the three-year statute does apply *to a contempt proceeding for a violation of an injunction.* The Supreme Court said, however (233 U.S. loc. cit. 606, 34 S. Ct. loc. cit. 693, 58 L.Ed. 1115, Ann.Cas. 1915D, 1044), that in the court in which the contempt proceeding had taken place— "The inquiry was directed solely with a view to punishment for past acts, not to secure obedience for the future; and to avoid repetition *it will be understood that all we have to say concerns proceedings of this sort only, and further, only proceedings for such contempt not committed in the presence of the court."*

Thus, in the most careful manner possible, so there never could be any mistake about it, the Supreme Court said in the Gompers case that the ruling in that case had no application to a proceeding for contempt committed *in the presence of the court.* The intimation is most clear that such a contempt is in an entirely different category from contempt for violation of an injunction.

Although the Supreme Court thus expressly ruled that the Gompers case is no authority in a case of the character now before this court, we must, of course, consider whether the reasoning of the case is applicable here.

The gist of the reasoning in the Gompers case is that "contempts *of the class under consideration"* (233 U.S. loc. cit. 610, 34 S. Ct. loc. cit. 695, 58 L.Ed. 1115, Ann.Cas. 1915D, 1044) (i.e., violations of injunctions) are crimes because they "are infractions of the law, visited with punishment as such" and so possess "the most fundamental characteristic of crimes as that word has been understood in English speech" (233 U.S. loc. cit. 610, 34 S.Ct. loc. cit. 695, 58 L.Ed. 1115, Ann.Cas.1915D, 1044). The thought is emphasized by pointing out (233 U.S. loc. cit. 612, 34 S.Ct. loc. cit. 696, 58.

L.Ed. 1115, Ann.Cas.1915D, 1044) that: "The English courts * * * leave the punishment of *this class of contempts* to the regular and formal criminal process."

It is clear from the language of the Supreme Court, despite the brevity of this characteristic Holmes opinion, that the reason why violation of an injunction is an offense within the meaning of the three-year statute is that it is "an infraction of law" (an injunction is a law) which may be "visited with punishment as such." Hence the distinction so clearly indicated from misbehavior in "the presence of the court." If one says to the presiding judge in open court, "Thou fool," he violates no law, but he is guilty of contempt; he has committed no "offense" against the United States, but he may summarily be punished. Contempt of that character is not "a crime" in any true sense.

The Gompers case, when read carefully, really is authority for the proposition that the three-year statute *does not apply to such a contempt as is charged here.* Two other cases are cited. United States v. Goldman, 277 U.S. 229, 48 S.Ct. 486, 72 L.Ed. 862, and Hart Inv. Co. v. Oil Co., D.C., 27 F.Supp. 713. The Goldman case, also dealing with the violation of an injunction, does no more than follow the Gompers case, with the same limitations. The court points out: "The only substantial difference between *such* a proceeding for criminal contempt and a criminal prosecution is that in the one the act complained of is *the violation of a decree* and in the other *the violation of a law*" (277 U.S. loc. cit. 235, 48 S. Ct. loc. cit. 487, 72 L.Ed. 862). And a decree is law. Punishment for the violation of a decree is essentially the same as punishment for the violation of a law (i.e., a statute). The basis for the conclusion reached is exactly the same as in the Gompers case. The opinions in both cases particularly point out that the proceeding before the court was contempt for violation of an injunction (which is the same as a law). *The inference is that vindication of the authority and dignity of the court as against a contempt committed in its presence is an entirely different matter.*

The Hart case, decided by the district court for the Eastern District of Texas, dealt with a matter which the court held was not contempt at all. It was not even suggested, and could not have been suggested, that the matter (theft from a receiver appointed by the court) was contempt committed *in the presence of the court.* What, therefore, was said by the district judge in the line of extending the doctrine of the Gompers case to all kinds of contempt (a thing the Supreme Court specifically said it would not do) is unadulterated and erroneous dictum.

The power to punish, as contempt, misbehavior committed in the presence of the court is an inherent power. Congress has not limited the time within which it may be punished. Perhaps there is an inherent limitation in the inherent power, a limitation arising out of laches— *the punishment must not be unreasonably delayed.* Certainly it is not unreasonably delayed if a proceeding for punishment is begun as soon as the misbehavior is discovered, particularly if the misbehavants, by concealment and fraud, have prevented discovery.

### Conclusion.

4. Our conclusion is that there is no real merit in any of the contentions made in support of the motions and that the motions should be overruled.