UNITED STATES of America,

v.

DIAPULSE CORPORATION OF AMER-
ICA, also known as the Diapulse Manu-
facturing Corporation of America, a cor-
poration, et al., Defendants.

No. 68 C 391.

United States District Court,
E. D. New York.

Nov. 7, 1973.

Cyril Hyman, New York City, (Robert A. Morse, U. S. Atty., of counsel), for United States.

Copal Mintz, New York City, for defendants.

## MEMORANDUM and ORDER

DOOLING, District Judge.

Plaintiff moved on August 3, 1973, by order to show cause, to punish The Diapulse Manufacturing Corporation ("Diapulse"), DCA Leasing Corp. ("DCA"), Jesse Ross and Bernard O. Siler for contempt of the preliminary injunction of December 8, 1971, and the permanent injunction of July 18, 1972. The contumacious conduct alleged comprises

1. Shipment on June 7, 1972, in alleged violation of the preliminary injunction, of a Diapulse device to Ross at Las Vegas for display at a therapy convention accompanied by labeling making claims of therapeutic efficacy.

2. Shipment on July 19, 1972, to Zimmerman in Pecatonia, Illinois, of a Diapulse modification kit with labeling claiming for the principal Diapulse device as kit-modified therapeutic efficacy, and did so without having obtained labeling approval from the FDA.

3. Shipment on July 21, 1972, to Appel in Portland, Oregon, of a Diapulse modification kit with labeling claiming for the principal Diapulse device as kit modified therapeutic efficacy, and did so without having obtained labeling approval from FDA.

4. Shipment on July 19, 1972—August 1, 1972, to Cook in Tampa, Florida of a Diapulse modification kit with labeling claiming for the principal Diapulse device as kit-modified therapeutic efficacy, and did so without having obtained labeling approval from the FDA.

5. Shipment on July 25, 1972, to Zimmerman in Pecatonia, Illinois, of about two Diapulse modification kits with labeling claiming for the principal Diapulse device as kit-modified therapeutic efficacy, and did so without having obtained labeling approval from the FDA.

6. Shipment on August 2, 1972, to Groves in Roanoke, Virginia, of a Diapulse modification kit with labeling claiming for the principal Diapulse device as kit-modified therapeutic efficacy, and did so without obtaining labeling approval from the FDA.

7. Sending on September 25, 1972, communications making claims of therapeutic efficacy applicable to a Diapulse device then held for sale by Campbell Soup Company at Chicago, Illinois, after it had been shipped in commerce.

A. Defendants move to dismiss the proceeding for want of jurisdiction on the ground that the last paragraph of 18 U.S.C. § 402 excludes from its scope contempts committed in disobedience of decrees entered in suits brought—as United States v. Diapulse Corporation, et al., 68 C 391, was brought—in the name or behalf of the United States. The major premise of the argument is necessarily that Section 402 is the sole source of jurisdiction for such a contempt proceeding; 21 U.S.C. § 332(b), it is argued, is not a source of contempt jurisdiction but simply invokes Section 402 and Criminal Rule 42 to the extent, and to the extent only, that Section 402

confers jurisdiction in the Section 332(a) cases covered by Section 332(b) (for the obsolete cross-reference in Section 332(b) to 28 U.S.C. § 387 (1928 edition) is, it is argued, a reference to matter now divided between 18 U.S.C. § 402 and Criminal Rule 42).

The major premise of the argument is false and the argument fails.

When United States v. Hudson, 1812, 11 U.S. (7 Cranch) 32, 3 L.Ed. 259, decided that the United States circuit courts were without jurisdiction to exercise a common law jurisdiction in criminal cases (in the particular case, an allegedly libelous charge that the President and the Congress secretly voted $2,000,000 to Bonaparte for leave to make a treaty with Spain), the Court also concluded that, while the courts had no implied jurisdiction of crimes against the state (at p. 34),

> "To fine for contempt, imprison for contumacy, enforce the observance of order, &c., are powers which cannot be dispensed with in a court, because they are necessary to the exercise of all others: and so far our courts, no doubt, possess powers not immediately derived from statute; but all exercise of criminal jurisdiction in common law cases, we are of opinion, is not within their implied powers."

See Michaelson v. United States ex rel., etc., Railway Co., 1924, 266 U.S. 42, 64–65, 45 S.Ct. 18, 69 L.Ed. 162; Jerome v. United States, 1942, 318 U.S. 101, 104–105, 63 S.Ct. 483, 87 L.Ed. 640.

Crimes generally, then, are defined by federal statutes that specify the elements of the offense, as in the crimes dealt with in Title 18 of the Code. The conspicuous exception is "contempt." Sections 401, 402, 3691 and 3692 of Title 18 of the Code do not define elements of the offense of contempt but rather regulate matters growing out of the non-statutory, independent existence of the punishable offense of contempt. *Cf. Michaelson, supra,* 266 U.S. at 66, 45 S.Ct. 18. Section 401 seems almost to define "contempts," but it rather restricts the common law power of the Courts at discretion to punish contempts by fine and imprisonment to three classes of contempts—such misbehavior of persons in a court's presence or so near it as to obstruct the administration of justice, misbehavior of the court's officers in their official transactions, and resistance or disobedience to its lawful process, orders, etc.; the section, that is, selects from the undefined field "contempt" certain classes of acts which may be punished in particular ways without specifying the elements of the conduct required to constitute the particular "contempts" criminal offenses.

Section 401 seems to have originated with 4 Stat. 487 in 1831 (but incorporating the limitation on mode of punishment to fine and imprisonment from Section 17 of the 1789 Act, 1 Stat. 83); the 1831 Act provides the threefold classification and descriptive content of present Section 401, but the 1831 Act took the form of enacting that the power of courts to issue attachments and inflict *summary* punishments for contempts should not extend to any cases except—and then it enumerated, the three classes now in Section 401 in essentially the same words. See Ex parte Robinson, 1873, 86 U.S. (19 Wall.) 505, 22 L.Ed. 205. The 1831 Act was continued into Revised Statutes § 725, where it united the language respecting punishment from the 1789 Act. It appeared in the same form in the 1911 codification of the Judicial Code as Section 268. In that codification the Section, following sections dealing with injunctions and suits in equity, provided, as had Section 725, that United States courts had power to administer oaths and to punish by fine or imprisonment, at discretion, contempts of their authority, and then provided further that such power should not extend to any cases except the three enumerated classes of acts. When the Judicial Code of 1911 was included in Title 28, as approved with the rest of the United States Code in 1926, Section 268 became Section 385 without change. When it was transferred into Title 18 of

the Code as Section 401, the language empowering the courts to administer oaths was deleted (or transferred elsewhere) and the remaining language was put into a single sentence and the clauses identifying the three classes of contempts were numbered.

So far as appears, when Gompers v. United States, 1914, 233 U.S. 604, 34 S. Ct. 693, 58 L.Ed. 1115, was decided, the statute law respecting contempt was comprised in Section 268 of the Judicial Code (now Section 401), and the only statute of limitations conceivably applicable to contempts was the predecessor of 18 U.S.C. § 3282, providing that a non-capital "offense" could not be prosecuted unless the indictment was found or the information instituted within the limitary period. The alleged contempts were committed in 1907–1909, and the rule to show cause why Gompers should not be punished for contempt issued in June 1911. It was argued that contempts are not crimes since not generally (at that time) tried by jury but summarily, and that hence the criminal statute of limitations would not apply to them. The Court held that the ordinary criminal statute of limitations applied to contempts directly or by analogy even though it was supposed that there was no constitutional right to jury trial in contempt cases. Said the Court, "If [contempts] are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech."

The Clayton Act, to which Section 402 traces, enacted in 1914, among other things gave private persons the right to injunctions against violations of the antitrust laws (Section 16, 38 Stat. 737), regulated the issuance of temporary restraining orders and interlocutory injunctions (Sections 17–19), and limited the use of injunctions in labor disputes (Section 20). Section 21 then provided that any act of willful disobedience of a decree which was also a criminal act under federal or state law was to be prosecuted as set forth in the following sections. Section 22 outlined the initiatory procedures, then provided—in all cases "within the purview of [the Clayton Act]"—for jury trial on the alleged contemnor's demand and for imprisonment of up to six months and a fine that could not exceed $1,000 so far as payable to the United States. Section 23 provided for review and bail as in a criminal case. Then Section 24 provided that none of the enactment applied to contempts in the court's presence, nor to contempts committed in cases initiated by or on behalf of the United States; such contempts were to be punished in conformity to the usages prevailing at law and in equity. Section 25 provided that "no proceeding for contempt shall be instituted against any person unless begun within one year from the date of the act complained of," and that the contempt proceeding was not a bar to criminal prosecution of the same act. These sections were carried into 28 U.S.C. §§ 386–390 intact.

The Clayton Act sections did not create a statutory crime of "contempt," they, rather, imposed restraints on the use of contempt in certain cases. Strictly, the sections dealt only with a doubly restricted class selected from the whole field of contempts, that is, contemptuous acts that were, *qua* acts, crimes *in se*, but exclusive of all such dual aspect contemptuous acts if committed against decrees in cases brought by the United States or if committed in the presence of the court. The sections abolished nothing: in the restricted class of cases defined in the Act a jury trial right was given, punishment was limited, and procedural courses were laid down. The cases excepted by Section 24 are not shorn of exposure to punishment but are left to the rigors of preexisting common law contempt, and the excepted cases are, predictably, those in which summary procedure and an absence of jury intervention were then thought critical (contempts in or very near the courtroom), and the Government cases, where a public substantive right is involved, as well as the public interest in obedience to lawful court orders, and procedural

trammels were not then thought warrantable.

*Michaelson, supra,* decided in 1924, is illustrative: it presented alleged contempts literally within the Clayton Act sections and not excluded by Section 24, and the challenge to the Act was that it unconstitutionally impaired the contempt powers indissolubly imparted to courts of equity by the law of their creation when the Act required jury trial on the alleged contemnor's demand. The Court held that the Clayton Act sections dealt with criminal contempts and that, while the Congress could not abrogate the contempt power, it could to some undefined extent regulate the exercise of the power. The creation of the right to a jury trial was thought justified because, particularly where the contempt arose in an injunction case to which the United States was not a party, the contempt proceeding was essentially an independent proceeding at law for criminal contempt to be governed in its trial incidents by usual criminal procedures, and involving, as all criminal cases do, the public interest. The Court supposed that there was not a constitutional right to jury trial as in an ordinary criminal case, but it concluded that a statutory right to a jury trial could be validly created.

United States v. Goldman, 1928, 277 U.S. 229, 48 S.Ct. 486, 72 L.Ed. 862, dealt with a contempt arising out of an antitrust case commenced by the United States. The Court apparently assumed that the alleged contempts were also crimes and thus within Section 21 of the Clayton Act but it held, of course, that the case was excepted by Section 24 and held that Section 24's exception of contempts arising out of suits commenced by the United States rendered inapplicable Section 25 of the Clayton Act, which imposed, in apparently general and unrestricted terms, a one year limitation on the commencement of contempt proceedings. Similarly, Pendergast v. United States, 1943, 317 U.S. 412, 63 S.Ct. 268, 87 L.Ed. 368, applied the general limitation of three

years in barring certain contempts committed in the presence of the court. At that time the one year statute was in 28 U.S.C. § 390 (as it is now in 18 U.S.C. § 3285) but it was not referred to as the applicable statute. The contempt involved was put forward and considered as a contempt within 28 U.S.C. § 385, now 18 U.S.C. § 401.

Bloom v. Illinois, 1968, 391 U.S. 194, 203–204, 88 S.Ct. 1477, 20 L.Ed.2d 522, treats Section 401 (as the present-day form of the Act of 1831) as the basis for the general power of the federal courts to punish criminal contempts, and the Clayton Act provisions (Sections 21–25, *supra*) as simply requiring jury trial and limiting punishment in the case of contemptuous acts that are also crimes except those committed in the courtroom or in disobedience of decrees entered in Government cases. *Bloom,* however, swept aside the older concern that intruding a jury into contempt cases would have constitutional risks and concluded that the Constitution requires jury trial of contempts other than petty contempts. See also Frank v. United States, 1969, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162.

Applied to allegedly contemptuous acts in disobedience of a decree entered in a case instituted by the United States, then, the ultimate basis of the jurisdiction to punish is the court's inherent common law power to vindicate its own decrees, as restricted by statute to the three classes of contempts specified in 18 U.S.C. § 401. The procedure is that meagerly indicated in Criminal Rule 42, which owes some of its matter to 28 U.S.C. § 387, but is essentially the procedure of custom; the rule includes a provision for jury trial where an act of Congress provides for it, but recent law renders the jury clause largely obsolete by recognizing a constitutional right to jury trial in all but petty contempt cases.

Is there any further applicable restriction on the contempt power? The Clayton Act restrictions on the exercise of the power of contempt were brought

into Title 28 of the Code as Sections 381–383 (Sections 17–19) and Sections 386–390 (Sections 21–25), and, were in that generalized context when the Federal Food, Drug and Cosmetic Act was enacted in 1938 (52 Stat. 1040, 21 U.S.C. §§ 301 et seq). Section 331 of that Act prohibited enumerated acts related to adulterated and misbranded foods, drugs, devices and cosmetics, Section 332(a) gave the district courts jurisdiction to restrain violations of certain (but not all) of the prohibitions of Section 331 and Section 333 made violations of the prohibitions of Section 331 misdemeanors (§ 333(a)) unless committed with intent to defraud or mislead, in which case the violation was made a felony (§ 333(b)).

Section 332 as enacted read (52 Stat. 1043):

"Sec. 302. (a) The district courts of the United States and the United States courts of the Territories shall have jurisdiction, for cause shown, and subject to the provisions of section 17 (relating to notice to opposite party) of the Act entitled 'An Act to supplement existing laws against unlawful restraints and monopolies, and for other purposes', approved October 15, 1914, as amended (U.S.C., 1934 ed., title 28, sec. 381), to restrain violations of section 301, except paragraphs (e), (f), (h), (i), and (j).

(b) In case of violation of an injunction or restraining order issued under this section, which also constitutes a violation of this Act, trial shall be by the court, or, upon demand of the accused, by a jury. Such trial shall be conducted in accordance with the practice and procedure applicable in the case of proceedings subject to the provisions of section 22 of such Act of October 15, 1914, as amended (U.S.C., 1934 ed., title 28, sec. 387)."

Section 17 is parental to much of present Civil Rule 65 and, plainly enough, Section 332(a) by invoking Section 17 meant to require adequate notice, hearing and finding procedures before ten day temporary restraining orders and preliminary injunctions could be made in FDA cases. Section 22 (28 U.S.C. § 387) regulates procedure, but it created the statutory right of the alleged contemnor to demand a jury trial, limited imprisonment to six months and the part of any fine made payable to the United States to $1,000. It seems to be conceded that the form of 21 U.S.C. § 332 would inevitably result in contempts that consisted in doing acts prohibited both by Section 331 and the injunction would be violations of the Act and crimes, and, hence, would be within the language both of Section 386 (now present in 18 U.S.C. § 402, first paragraph, and 18 U.S.C. § 3691, first paragraph) and Section 389 (now present in 18 U.S.C. § 402, third paragraph, and 18 U.S.C. § 3691, second paragraph). However, Section 332(b) is perfectly lucid in invoking only Section 387 and neither Section 386 or Section 389. The only part, that is, of present-day Section 402 that is invoked is the second paragraph, the limitation on fine and imprisonment, and the only part of 18 U.S.C. § 3691 that is invoked is the last part of the first clause, dealing with the granting of a jury trial on demand of the alleged contemnor.

The cross reference in Section 332(b) is, therefore, not a nullity. It certainly requires what the Constitution doubtless also requires, a jury trial, and it may effect a limitation on fine and imprisonment, unless the cross reference ought to be read simply as importing into Section 332 cases only the mode of trial, that is upon a rule to show cause and affidavit or information rather than indictment, and by a jury only on the alleged contemnor's demand called as 28 U.S.C. § 387 (Section 22) provided. *Cf.* United States v. Dean Rubber Mfg. Co., W.D. Mo.1947, 72 F.Supp. 819.

It is suggested that the reference to Section 387 must be total and must bring into play those parts of the Clayton Act and Sections 386–390 of former Title 28 which except contempts arising in Government enforcement cases and

contempts committed in the courtroom. But Section 332(b) is too precise and too special in its circumstances to tolerate that interpretation. Section 332(b) invokes Section 387 for "trial" procedure, and says no more than that. It deals with a class of cases none of which could ever have been subject to the Clayton Act provisions (and to former 28 U.S.C. §§ 386–390) because, under 21 U.S.C. § 337, the only injunction cases permitted by 21 U.S.C. §§ 331–337 are injunction suits initiated by the United States. Hence the reference in § 332(b) to Section 387 (Section 22) would be a completely null reference if read to incorporate with Section 387 its own Clayton Act exceptions, for the only cases within Section 22 are the private injunction cases authorized by Section 16 of the Clayton Act, and no such injunction suit is possible under Section 332 perforce of Section 337. The reference in Section 332(b) to Section 387 (Section 22) is a necessary reference precisely because but for the reference Section 332 cases could not fall within former 28 U.S.C. § 387 (Clayton Act § 22).

 B. Defendants suggest that 18 U.S.C. § 3285 imposes a limitation of one year and precludes resort to the general statute of limitations, 18 U.S.C. § 3282, which provides a limitation of five years. Section 3285, however, applies only to proceedings for criminal contempt that are "within section 402." As shown, the present case is not "within section 402" because cases of this class are excluded by the third paragraph of Section 402.

C. It is contended that the petition does not charge prosecutable offenses because the deliveries for introduction into commerce that are charged are not deliveries of Diapulse devices but of "modification kits," whereas the injunctions forbid such deliveries only of Diapulse devices, assembled or unassembled (December 8, 1971) and of articles of device known as Diapulse, or any similar articles or devices, in whole or in part, assembled or unassembled (July 15, 1972). The language of the injunctions is sufficient to comprehend the modification kits if they were (as the quoted labeling indicates) for integration in the operation of Diapulse units and were so described in the accompanying literature as to extend the quoted therapeutic claims to the united devices.

D. It is argued that the sections of the statute allegedly violated are not referred to in the order to show cause and petition (Criminal Rule 7(c)(1)). There is no error in omitting such a citation. As indicated, the violation is contempt, an offense not created by statute but limited by statute to the classes described in 18 U.S.C. § 401. Since it is not any statutory offense that has been committed, citation of Section 401(3) is needless.

E. To transfer the case formally to the criminal docket is not inappropriate. It will emphasize that the proceeding is not "in" the civil case but is an independent criminal proceeding growing out of it.

The motions are, accordingly, granted and denied as hereinabove set forth.

It is so ordered.