In re Sylvia A. RYAN, Appellant.

No. 01–SP–1035.

District of Columbia Court of Appeals.

Submitted March 25, 2003.

Decided May 15, 2003.

Sylvia A. Ryan, pro se.

Joyce E. Peters, Bar Counsel, and Elizabeth A. Herman, Senior Assistant Bar Counsel, were on the brief, for the Board on Professional Responsibility.

Before SCHWELB and GLICKMAN, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

Sylvia Ryan appeals, *pro se,* from her conviction on one count of criminal contempt of court. She alleges insufficient evidence. We affirm.

## I.

In January 1996, this court suspended appellant from the practice of law for four months for numerous disciplinary violations arising from her representation of five undocumented aliens. *In re Ryan,* 670 A.2d 375 (D.C.1996). She has not sought reinstatement, for which we required a showing of fitness. Appellant also received reciprocal suspensions from practice in Massachusetts and New York, neither of which has reinstated her. On October 23, 2000, Bar Counsel filed a motion in the Superior Court seeking an order for appellant to show cause why she should not be held in contempt of court for the unauthorized practice of law. The court then issued the order, but appellant failed to appear. The court then issued a bench warrant; it was executed and appellant was released on her own recognizance. Trial was set for June 1, 2001.

At trial, appellant moved to dismiss, contending that she was acting merely as an employer, or as an agent of an employer, trying to register and employ aliens. The court took the motion under advisement pending presentation of evidence. Bar Counsel called three witnesses. First, Nader Rezvani testified that he had entered into a contract with appellant for legal services directed at obtaining a labor certification and visa for his niece. According to the testimony, Rezvani paid $7,500 down on a sum totaling $15,000 for a contract which read: "I, S. Anita Ryan, guarantee that you will receive an approved labor certification visa petition. And that I will use *all my experience and knowledge of the law* to try to obtain the desired results." (Emphasis added.) Rezvani never received a visa for his niece and testified that appellant had told him she would refund his down payment. She refunded only $1,500. Reszani also testified that the contract bore the letterhead "Ryan & Webster," which gave him the impression that he was dealing with a law firm.

Bar Counsel's second witness, Nse Akpe, testified that he, too, had been referred to appellant for legal services in obtaining immigration papers for his brother. Akpe further testified that appellant had confirmed that she did that type of work as an attorney. When asked about the exchange between appellant and himself leading to the execution of their contract, he testified that "Ms. Ryan told me that she confirmed that yes she does that kind of work, she is a lawyer." Akpe then testified that appellant proposed to charge him $10,000 for her services, that he paid her $5,000 as a down payment, and that ultimately he paid appellant a total of $6,500. According to the testimony, the contract contained language similar to the contract with Rezvani and was accompa-

nied by a cover letter with the "Ryan & Webster" letterhead that led Akpe,[1] like Nezvani, to believe he was dealing with a lawyer and a law firm. She also told him that she was a law professor at George Mason University and that she practiced law; on cross-examination, when appellant asked how Akpe knew that appellant practiced law, he responded by stating: "Mr. Nsubuga told me that you practice law and you also told me that you practice law and you also teach law at George Mason law school." Ultimately, Akpe's brother never received the immigration papers, and appellant never refunded Akpe's money.

Bar Counsel's last witness, Hudson Nsubuga, testified that he had been referred to appellant for legal services for his sister, describing services similar to those appellant had contracted to provide for Rezvani and Akpe. In obtaining Nsubuga as a client, according to his testimony, appellant represented "that, yes, she knows the law, and how she would bring my sister here." Nsubuga testified: "[Appellant stated] that she is an immigration lawyer with expertise in filing petitions and that she would, she knows that law, that she will be able to [obtain the immigration papers]. Nsubuga and appellant then entered into a contract for $12,000, half of which Nsubuga paid upon execution of the contract, with the remainder to be paid upon issuance of the visa. The letterhead and the relevant portions of the contract read into the trial record were the same as the contracts and correspondence between appellant and the other witnesses,

Rezvani and Akpe, in all cases referring to appellant's agreement to do "legal work." [2] Again, the visa was not obtained, and appellant kept the down payment.

Appellant rested without putting on a defense, then moved orally for a judgment of acquittal. Appellant argued that she had not been acting as an attorney for the witnesses, but only as an employer or agent of an employer, and thus that she had not violated the court order barring her practice of law. The trial court denied the motion, observing that the evidence belied her legal argument. The court then issued its written decision denying appellant's motion, holding her in criminal contempt, and ordering a sentencing hearing. This appeal followed.

## II.

We review denial of a motion for judgment of acquittal *de novo* and, "like the trial court, determine whether the evidence, viewed in the light most favorable to the government, was such that a reasonable juror could find guilt beyond a reasonable doubt." *Harris v. United States,* 756 A.2d 458, 461 (D.C.2000) (citations omitted). "In order to convict an individual for criminal contempt it is necessary to find beyond a reasonable doubt that the individual committed a volitional act that constitutes contempt," *Smith v. United States,* 677 A.2d 1022, 1030 (D.C.1996), which we have defined as "a willful disregard or disobedience of a public authority."

---

1. The language was virtually identical to that of the contract with Rezvani: "I, S. Anita Ryan, guarantee that you will receive an approved labor certification visa petition. And that I will use *all my experience and knowledge of the law* to try to obtain the desired results." (Emphasis added.)

2. The following exchange took place regarding the contract language:

Q: Okay. And the first paragraph it says that Ms. Sylvia Anita Ryan agrees to do the following *legal work,* labor certification,—petition. Is that what you were hiring her, Ms. Ryan, to do for you?
A: Yes.
(Emphasis added.)

*Id.* We have held accordingly that when a disbarred lawyer is found to have practiced law in this jurisdiction without first having obtained reinstatement, that lawyer may be held in criminal contempt of court. D.C. Ct.App. R. 49(d); *see In re Burton,* 614 A.2d 46 (D.C.1992).[3]

■ Appellant argues in her defense that, under U.S. Department of Labor regulations, 20 C.F.R. Part 655 (1977), an employer or employer's agent is entitled to perform the procedures that appellant sought to perform here, without being a licensed attorney. The trial court accurately observed that the evidence did not support this contention.[4] First, appellant contracted directly with the witnesses on her own behalf as their agent, not on behalf of herself as an employer or on behalf of any other employer. Second, assuming the parties had identified a specific employer for whom appellant nominally "worked" in recruiting alien laborers for employment, Bar Counsel correctly points out that the D.C.App. R. 49(c)(2) exemption to the requirement of a license to practice law does not apply here. That exemption for an attorney who provides "legal services to members of the public solely before a special court, department or agency of the United States" requires, among other provisions, that the "practitioner expressly give[ ] prominent notice in all business documents of the practitioner's bar status and that his or her practice is limited consistent with this section (c)."

D.C.App. R. 49(c)(2)(C). There is no record evidence to support findings that appellant provided notice that she no longer was a member of the bar or had limited her practice to a special court or a United States department or agency. Her retainer agreements, in particular, contained no reference to her not having a license to practice law, let alone an acknowledgment of her suspension—facts she concealed from her clients.

■ Absent availability of the exemption on which appellant relies, the evidence was more than sufficient to sustain the trial court's ruling. All three witnesses testified that appellant affirmatively had represented that she was an attorney and at no time had done anything to dispel a belief that she was. All three witnesses also testified that appellant's letterhead, including her "firm" name, led them to believe that she was an attorney working with the law firm Ryan & Webster. The language in the contracts between appellant and each of the witnesses emphasized appellant's knowledge and mastery of the law. All of this, when taken in conjunction with appellant's reference to the witnesses as "clients"—and when coupled with the amount of the fees that appellant charged—is evidence more than sufficient to support the trial court's finding that appellant had, in fact, held herself out as a licensed attorney and provided legal services in contravention of the court order

3. "The elements of criminal contempt are (1) willful disobedience (2) of a court order (3) causing an obstruction of the orderly administration of justice." *Swisher v. United States,* 572 A.2d 85, 89 (D.C.1990) (citing *In re Thompson,* 454 A.2d 1324, 1326 (D.C.1982) (*per curiam* )). We have held that practicing law despite a court order disbarring an attorney or suspending his or her license satisfies that test. *In re Burton,* 614 A.2d 46 (D.C. 1992). It is undisputed that such a court order exists and that willful disobedience of

that order obstructs the orderly administration of justice. We thus proceed to determine whether there was sufficient evidence to conclude that appellant willfully disobeyed the court's order by practicing law.

4. We do not decide—nor do we dispute— whether 20 C.F.R. Part 655 (1977) under some factual situations would permit a non-lawyer to perform services similar to those performed by appellant here.

suspending her license to practice law in the District of Columbia.

*Affirmed.*