**Simon BANKS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 04–SP–789.**

District of Columbia Court of Appeals.

Argued May 22, 2007.

Decided June 14, 2007.

Cynthia Nordone, appointed by the court, for appellant.

John P. Mannarino, with whom Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III, Lisa Schertler, and John D. Griffith, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and BLACKBURNE–RIGSBY, Associate Judges, and WAGNER, Senior Judge.

REID, Associate Judge:

This is our fourth case involving appellant, Simon Banks, a 1975 law school graduate who has never been admitted to the Bar of the District of Columbia, nor to any other bar, and who previously has been held in civil contempt, convicted of criminal contempt, and found in violation of trade practices, for acts relating to the unautho-

rized practice· of law. *See In re Simon Banks,* 805 A.2d 990, 993 (D.C.2002)(*Banks III*) (sustaining contempt orders "resulting from appellant's disregard of injunctions issued by this court against the unauthorized practice of law" and affirming an "order directing appellant to pay partial attorney's fees of members of the Committee on Unauthorized Practice of Law [], which sought to enforce the court's prior injunction"); *Banks v. District of Columbia Dep't of Consumer and Regulatory Affairs,* 634 A.2d 433, 439–40 (D.C. 1993)(*Banks II*) (sustaining a determination by the District's Department of Consumer and Regulatory Affairs that appellant "engaged in three deceptive trade practices," in violation of the District's Consumer Protection Procedures Act, "based on the unauthorized practice of law"); and *In re Simon Banks,* 561 A.2d 158, 167–69 (D.C.1987) (*Banks I*) (finding, after a hearing conducted by a senior judge of this court on the petition of the court's Committee on Authorized Practice of Law, that "appellant has violated this court's rule prohibiting the unauthorized practice of law," and enjoining appellant from engaging in specified acts relating to the practice of law or the status of a lawyer).

The case before us grew out of a 2002 request by the United States Attorney for the District of Columbia for contempt proceedings against Mr. Banks for violation of a 1995 order.[1] After the .issuance of a show cause order, a hearing took place before a Superior Court judge, sitting by designation. The judge "[found] beyond a reasonable doubt that [Mr. Banks] is guilty of contempt as charged...." Mr. Banks filed an appeal. In his brief on appeal, submitted by a court-appointed attorney,

Mr. Banks mainly argues that this court "acted beyond its authority in convicting him of contempt ... [because] [t]he conduct complained about here is beyond the scope [of the rule regulating unauthorized practice of law]," since it occurred outside the District of Columbia. Alternatively, he asserts that "the evidence was insufficient to prove beyond a reasonable doubt that [he] committed criminal contempt," that is, that he "willfully violated" the court's order. We affirm the order of April 8, 2004, adjudging Mr. Banks guilty of criminal contempt as charged.

## FACTUAL SUMMARY

In our prior cases we recounted part of the protracted history of complaints against Mr. Banks, beginning in 1984, and his persistent violation of court orders enjoining him from holding himself out as a lawyer and engaging in related conduct. We do not repeat that history, except as necessary to an understanding of the case now before us. In January 1995, after finding that Mr. Banks had "flagrantly, intentionally, repeatedly and contumaciously violated virtually every provision of the Court's 1987 injunction," *Banks III, supra,* 805 A.2d at 995, the Honorable Richard A. Levie, sitting by designation as a member of this court, imposed "an expanded and stricter injunction" ("Order # 18"). *Id.* In 1996, Mr. Banks was convicted on five counts of criminal contempt for violations of the 1995 injunction, but his sentence was suspended and he was placed on five years of conditional probation. In light of allegations that Mr. Banks violated the conditions of his probation, Judge Levie held a hearing. Upon finding repeated violations of the conditions of his probation in August 1997, the judge revoked Mr.

---

1. Order # 18 is an extensive sixty-five page document issued on January 13, 1995, which includes a permanent injunction, an expansion of the court's 1987 injunction. *See Banks III, supra,* 805 A.2d at 995.

Banks' probation, sentenced him to 175 days of incarceration, suspended execution except for twenty-one days, and again placed him on probation. His probation terminated on August 27, 2001.

Undeterred by his criminal contempt conviction and punishment, Mr. Banks engaged in other acts—from October 2001 to December 2001, and in February 2002, July 2002, and October 2002—ostensibly prohibited by Order # 18. As a result of Mr. Banks' renewed efforts to circumvent the 1995 permanent injunction, the United States Attorney for the District of Columbia filed an application (with a sworn affidavit and exhibits) in this court on December 11, 2002, requesting the initiation of a criminal contempt proceeding against Mr. Banks "for his willful disobedience of this [c]ourt's Order # 18," specifically paragraphs (3), (4) and (6).[2] In response to the

application and to the accompanying government request for the appointment of a presiding judge, the issuance of a show cause order to Mr. Banks, and the scheduling of a status hearing, the Chief Judge of this court at the time issued an order on December 17, 2002, designating and assigning the Honorable Noel Anketell Kramer, then an Associate Judge of the Superior Court of the District of Columbia, "to serve as a judge of this court for the purposes of conducting a contempt hearing in [Mr. Banks' case]."[3]

On March 5, 2003, Judge Kramer ordered Mr. Banks to appear and show cause on March 24, 2003, "why [he] should not be held in criminal contempt and punished for such criminal contempt by reason of his failure and refusal to comply with Order # 18." The order to show cause contained four counts of contempt, as pro-

---

2. Paragraphs (3), (4) and (6) of Order # 18 provided:

> Respondent is hereby permanently enjoined and restrained specifically from: . . .
> (3) Using such terms to describe himself or his qualifications as "administrative law judge", "administrative trial advocate", any abbreviation of the foregoing terms, or any other similar term or description also which reasonably denotes that Respondent's former employment as a hearing examiner constitutes a qualification or license to practice law in the District of Columbia;
> (4) Describing his business as providing legal representation in any field, describing his professional or business activity as going to, or acting in court, or describing his business as providing nationwide representation; . . .
> (6) Using any advertising materials, business cards, firm resumes, personal resumes, firm descriptions, stationery, personalized forms or any other business documents relating to representation of individuals before administrative agencies or courts in this jurisdiction which do not expressly state:
> *THIS IS TO ADVISE THAT SIMON BANKS, AND SIMON BANKS T/A JOB PROTECTORS, IS NOT ADMITTED, AND*

*HAS NEVER BEEN ADMITTED TO PRACTICE LAW IN THE DISTRICT OF COLUMBIA, OR ANY OTHER JURISDICTION. HE IS NOT AUTHORIZED TO REPRESENT ANY PERSON OR ENTITY BEFORE, ANY COURT IN THE DISTRICT OF COLUMBIA. HE IS NOT AUTHORIZED TO GIVE OPINIONS CONCERNING ANY PERSON'S LEGAL RIGHTS.*
> This statement shall be printed, in all instances, in bold-face, underscored, in all capital letters. It shall be printed at the beginning of all documents not signed by customers in a separate paragraph in typeface no smaller than the largest typeface of the remainder of the document. With respect to each document that a customer signs, this statement shall appear at the beginning, in a separate paragraph, in typeface no smaller than the largest typeface of the remainder of the document; and the customer shall initial each line and then sign immediately below the statement indicating the actual date of execution[.]

3. Judge Kramer was nominated by the President of the United States as an Associate Judge of this court in February 2005, was confirmed by the Senate, and assumed her position on August 1, 2005.

posed by the United States Attorney. These counts related to (1) Mr. Banks' advertisements in a federal publication and on the radio using language prohibited by Order # 18 and his failure to include the disclaimer, required by Order # 18, pertaining to his lack of authority to practice law in this or any other jurisdiction in the United States; (2) his description of himself in a notice of representation sent to the federal Department of Education "as a former administrative law judge and a provider of nationwide representation," and his omission of the required disclaimer; and (3) his description of himself in a telephone conversation (with a criminal investigator employed by the United States Attorney's office) "as a former administrative law judge and a provider of nationwide representation."

The hearing on the show cause order took place on January 16 and 20, 2004. The government presented testimony from Diane Eickman, a criminal investigator for the United States Attorney's office in the District of Columbia, who on July 10, 2002, called a Virginia telephone number listed in an advertisement placed by Mr. Banks in the Federal Times, a government publication "routinely distributed in the District." She made the call from her office in the District. The purpose of her call was "to see how Mr. Banks would identify himself."[4] Ms. Eickman called herself "Diane Eckard" and said she was a federal government employee who "was having a problem with [her] supervisor," and that "the agency [she] worked for was in the District of Columbia." In answering the

telephone, Mr. Banks stated, "Judge Banks Group."[5] When Ms. Eickman responded, "Judge Banks," the person on the other end of the line replied, "yes."

Tamika Williams, a credit and billing manager for the Army Times (the Federal Times "is a subsidiary of Army Times Publishing" and is "geared toward federal employees"), testified that about 65,000 copies of the Federal Times, a weekly publication, are distributed in the Washington Metropolitan area with the District of Columbia as "a high target area"; that "Dr. Simon Banks and Associates" of Alexandria, Virginia, requested that an advertisement be placed in the Federal Times for nine consecutive weeks beginning on October 8, 2001 and continuing through December 17, 2001. The advertisement stated in pertinent part:

### DR. SIMON BANKS & ASSOCIATES FORMER ADMINISTRATIVE LAW JUDGES VICTIMS OF WRONGFUL EMPLOYMENT ACTS

If you have been a victim of discrimination, reverse discrimination or wrongful Employment action because of your race, sex, age, disability, or because you have filed a previous complaint, or because you were a whistle blower, call [the listed Virginia telephone number]. **E–Mail:** *drsbanks@msn.com*, **and be represented by a former Judge\*** Nationwide Representation.

(Emphasis in original).

Gregory Pack, a sales representative with Verizon Communications, examined

---

4. Ms. Eickman's conversation with Mr. Banks was recorded and the government introduced the recording into evidence.

5. Ms. Eickman stated that she knew the voice on the telephone was that of Mr. Banks because she went to his apartment on August 12, 2002, with an FBI Special Agent. Although there was no answer at his apartment,

as she proceeded to the elevator to leave, she spoke to a man who was walking toward her. She recognized him from photographs of Mr. Banks. When he said, "hello," she recognized his voice from her earlier telephone conversation, and watched him go to the apartment where Mr. Banks lived.

telephone billing records for Mr. Banks during the period October 2001 through February 2002. Mr. Banks is identified in the billing as "Judge S. Banks–ALJ," with a Virginia billing address; the Virginia address is the same one which appeared in Mr. Banks' Federal Times advertisement. Mr. Pack also testified concerning a District of Columbia telephone number assigned to "Simon Banks, Judge" as of September 23, 2002. Calls to the District number were forwarded to Mr. Banks' Virginia telephone number.[6]

Laura Skelly Gonzalez, general sales manager for WJZW–FM, an affiliate of ABC, provided information pertaining to a broadcast contract between the radio station, located in the District, and Mr. Banks. Mr. Banks used the name "Judge Simon Banks Group" or "Judge Simon Banks" for a sixty-second and a ten-second commercial aired on WJZW–FM for the period October 21, 2002 to May 4, 2003.[7] The sixty-second radio advertisement stated, in part:

> **GOVERNMENT EMPLOYEES PRO-TECT YOUR RIGHTS.** If you are a victim of employment discrimination, on the basis of race, sex, age, handicap, or if you've been denied a promotion, subjected to wrongful termination, suspension or retaliation because you filed a complaint against your supervisor, or because you are a whistleblower, **CALL JUDGE BANKS GROUP AT 202–347–5458 AND BE REPRESENTED BY A FORMER JUDGE....**
>
> Judge Simon Banks, Former Administrative Law Judge, and CEO of **JUDGE BANKS' GROUP** has represented, attorneys, doctors, unions, and is authorized to represent clients in all the 50 States. Protect your employment. Call Judge Banks' Group, 202–347–5458.

Anthony L. Thompson, another government witness, worked in the District of Columbia, at the Office of Indian Education at the federal Department of Education, from December 1990 through October 10, 2003. After the Department gave him notice of intent to suspend him in 2002, he "located an attorney" through a federal newspaper. Mr. Thompson met with Mr. Banks in Virginia. Mr. Banks informed Mr. Thompson that "he was a former administrative judge." Mr. Thompson executed a representation agreement with Mr. Banks, paid him a consultation fee, and other additional fees.[8] Mr. Banks sent a letter concerning his representation of Mr. Thompson to an official at the Department of Education in the District, Cathie Martin. The term "Administrative Law Judges" appeared in bold print at the top of the letter, and the words "Nationwide Representation" were placed at the bottom of the letter, also in bold print.

Judge Kramer issued a detailed, thirty-five page cogent analysis on April 8, 2004, which contained factual findings and conclusions of law. The judge "[found] beyond a reasonable doubt that [Mr. Banks] is guilty of contempt as charged in Counts One, Two, Three and Four of the Show Cause Order ...;" the judge sentenced him to six months in jail on each count (to run consecutively), and imposed a fine of

---

**6.** The trial court admitted government exhibits regarding the telephone records reviewed by Mr. Pack.

**7.** The trial court admitted a government exhibit showing an invoice relating to Mr. Banks' contract with WJZW–FM, copies of checks or money orders from Mr. Banks for

the advertisement, e-mail communications between the station and Mr. Banks, and "a text version of the commercial that aired on [the] radio station for Mr. Banks."

**8.** The government introduced into evidence the receipt for the consultation fee.

$4,000.00, payable six months after release from jail.

## ANALYSIS

Mr. Banks asserts that this court "acted beyond its authority in convicting him of contempt ... [because] [t]he conduct complained about here is beyond the scope" of its rule concerning the unauthorized practice of law, since it "occur[red] outside of the District of Columbia." He also contends, alternatively, that "the evidence was insufficient to prove beyond a reasonable doubt that [he] committed criminal contempt," that is, that he "willfully violated" the court's order. The government maintains that Mr. Banks' "claim amounts to an assertion that the evidence against him was insufficient because the government failed to prove that the offense occurred in the District of Columbia"; and that the evidence was sufficient to prove that Mr. Banks violated Order # 18, as charged.

■ We previously summarized our standard of review in a criminal contempt case:

"On appeal of a finding of criminal contempt, we must view the evidence in the light most favorable to sustaining the judgment." *In re Vance,* 697 A.2d 42, 44 (D.C.1997) (citing *Bethard v. District of Columbia,* 650 A.2d 651, 654 (D.C. 1994) (per curiam)). The trial court's findings may not be disturbed "unless they are 'without evidentiary support or plainly wrong.'" *Id.* (quoting *Bethard, supra,* 650 A.2d at 654). To establish criminal contempt, the government must prove beyond a reasonable doubt that the defendant willfully disobeyed a court order, "causing an obstruction of the orderly administration of justice." *Swisher v. United States,* 572 A.2d 85, 89 (D.C.1990) (citing *In re Thompson,* 454 A.2d 1324, 1326 (D.C.1982) (per curiam)).

*Jones v. Harkness,* 709 A.2d 722, 723 (D.C. 1998); *see also In re Ryan,* 823 A.2d 509, 511–12 (D.C.2003); *Banks III,* 805 A.2d at 1003; *In re Richardson,* 759 A.2d 649, 654 (D.C.2000). "'The offense of criminal contempt requires proof of a contemptuous act and a wrongful state of mind.'" *Banks III,* 805 A.2d at 1003 (quoting *Mabry v. Demery,* 707 A.2d 49, 51 (D.C.1998)). "A contemptuous act may be conduct that interferes with the orderly administration of justice or it may be 'disobedience or resistence' to court orders through actions committed outside the presence of the court." *Id.* (quoting *Grant v. United States,* 734 A.2d 174, 176 (D.C.1999)).

■ Mr. Banks' argument that this court acted beyond the scope of its powers and jurisdiction is unavailing. Under D.C.Code § 11–741(a) (2001), "the District of Columbia Court of Appeals, or a judge thereof, may punish for disobedience of an order or for contempt committed in the presence of the court." D.C.Code § 11–707(a) authorizes the Chief Judge of this court to "designate and assign temporarily one or more judges of the Superior Court of the District of Columbia to serve on the District of Columbia Court of Appeals ... whenever the business of the District of Columbia Court of Appeals so requires." Moreover, this court has the power to regulate the practice of law in this jurisdiction, and that power encompasses the unauthorized practice of law. *See Brookens v. Committee on Unauthorized Practice of Law,* 538 A.2d 1120, 1125 (D.C.1988) ("The great weight of authority renders it almost universally accepted that the highest court in the jurisdiction is imbued with the inherent authority to define, regulate, and control the practice of law in that jurisdiction[;]" and "[i]t is generally conceded that the constitutional or statutory power to control bar admissions and discipline of members entails the authority to control

unauthorized practice.") (citations omitted); *see also* D.C.Code § 11–2501(a) ("The District of Columbia Court of Appeals shall make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion.").

As part of its authority to control the unauthorized practice of law, this court promulgated D.C.App. R. 49. Rule 49(a) provides: "No person shall engage in the practice of law in the District of Columbia or in any manner hold out as authorized or competent to practice law in the District of Columbia unless enrolled as an active member of the District of Columbia Bar, except as otherwise permitted by these Rules." Rule 49(e)(2) specifies, in pertinent part: "Violations of the provisions of this Rule 49 shall be punishable by the Court of Appeals as contempt. . . ."

 Rule 49 generally precludes a person who is not an active member of this jurisdiction's Bar from engaging in the practice law in the District. It also prohibits such a person from holding himself or herself out in any manner as competent to practice law in the District. This case requires us to determine whether the acts engaged in by Mr. Banks fall under the authority of this court to regulate the practice of law in the District of Columbia. We conclude that they do.

In *Hunter v. United States,* 48 U.S.App. D.C. 19 (1918), the defendant, who violated a District of Columbia juvenile court order by removing his son from a Maryland institution, was found guilty of contempt of court. On appeal, the father argued that the court had no jurisdiction because the act of contempt took place in Maryland. The court rejected his jurisdictional contention, saying:

The fact that the offense was committed at a point remote from the court, in an adjoining State, is of no importance. "The question is not one of geography or topography, or propinquity or remoteness, but one of direct influence upon the administration of justice." The administration of justice is equally obstructed wherever the act is done; and the place of the solicitation is absolutely of no consequence whatever. Whether the act was done in the courthouse, or a mile or 100 miles away, the result is precisely the same; the disturbance to the court is precisely the same. The act in its nature is not dependent upon location for its greater or less influence on the administration of justice.

*Id.* at 25 (quoting *McCaully v. United States,* 25 App. D.C. 404, 413 (1905)); *see also Crutchfield v. United States,* 779 A.2d 307, 334 (D.C.2001) (defendant was charged with obstruction of justice in the District of Columbia for actions that "took place wholly in Maryland" court had jurisdiction and the conviction was affirmed); *Ford v. United States,* 616 A.2d 1245, 1252 (D.C.1992) ("Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if [the actor] had been present at the effect . . . .") (citation omitted). In addition, we have held previously that where an element of the crime takes place within the District of Columbia, the court has territorial jurisdiction. *See Dyson v. United States,* 848 A.2d 603, 610 (D.C. 2004) ("the trial court had territorial jurisdiction because an element of [the offense] . . . occurred within the boundaries of the District of Columbia)" (citing *United States v. Baish,* 460 A.2d 38, 40 (D.C. 1983)) ("Where [the criminal act] serves as one of several constituent elements to the complete offense, we have found jurisdiction to prosecute . . ., even though the remaining elements occurred outside the

District.") (citing *Adair v. United States,* 391 A.2d 288, 290 (D.C.1978)) (internal quotation marks omitted).

Here, Mr. Banks' case falls squarely under the principles articulated in *Hunter, Dyson,* and other cases. Order # 18 was issued against Mr. Banks in the District of Columbia and his disobedience of the prohibitions set out in the order had a "direct influence upon the administration of justice"; "[t]he administration of justice is ... obstructed wherever the act [of disobedience] is done; and the place of the solicitation is absolutely of no consequence." *Hunter, supra,* 48 U.S.App.D.C. at 25. Mr. Banks committed contemptuous acts in that he disobeyed a District of Columbia court order and thus obstructed the administration of justice by (1) placing an advertisement in the Federal Times (which, as indicated by Ms. Eickman's and Ms. Williams's testimony, is distributed in the District) from his Virginia telephone and using descriptions prohibited by Order # 18 ("Former Administrative Law Judge[]"; "a former Judge"; and "nationwide representation"), and failing to include the required disclaimer (including his lack of admission to practice law in any jurisdiction); (2) placing an advertisement from Virginia with a District of Columbia radio station, using words prohibited by Order # 18 ("Judge Simon Banks Group" and "Judge Simon Banks"), and failing to include the required disclaimer (including his lack of admission to practice law in any jurisdiction); and (3) meeting with a prospective client, referring to himself as "a former administrative judge," and agreeing to represent the individual at an administrative hearing at the federal Department of Education, located in the District; and (4) describing himself or his firm to a criminal investigator and an official of the Department of Education by using terms prohibited by Order # 18: "Judge Banks," "Judge Banks' Group," "Administrative

Law Judges," and "Nationwide Representation." *See Crutchfield, Ford, Hunter, supra.* In short, he held himself out as authorized to practice law in this jurisdiction. Moreover, in each instance, at least one element of criminal contempt, "causing an obstruction of the orderly administration of justice," took place in the District. *See Dyson, Baish, Adair, supra.*

■ Contrary to Mr. Banks' argument, there can be no doubt that the government proved the other element of criminal contempt, willful disobedience of a court order. Mr. Banks clearly was aware of the acts prohibited by this court's 1987 injunction, as well as those addressed in the expanded 1995 Order # 18, which is at issue here. Significantly, he knew that in *Banks III, supra,* we affirmed his criminal contempt conviction, in part, because he "placed an advertisement in the Federal Times describing himself as a former administrative law judge and stating that he provided nationwide representation, without the statement required by paragraph 6 of [the court order]." *Id.* at 997, 1003. Here, the evidence shows that Mr. Banks willfully disobeyed Order # 18 by placing the advertisements in the Federal Times, a publication distributed in the District and directed toward federal government employees, and on WJZW–FM, a radio station located in the District, and using obviously prohibited descriptions of himself and his firm without the required disclaimer designed to alert readers and listeners that he had no authority whatsoever to practice law in the District. Furthermore, through these advertisements as well as his communication with the criminal investigator and federal Department of Education official, both based in the District, in which he described himself as a judge and a former administrative law judge, Mr. Banks willfully and wrongfully used prohibited terms and held himself out as one

authorized to practice law in this jurisdiction, in blatant violation of Order # 18. Willful disobedience also is present because Mr. Banks knew from the affirmance of his contempt conviction in *Banks III* that " '[w]e demand compliance with court orders—subject to sanction for contempt—until they are reversed on appeal or otherwise are modified by motion....' " *Id.* at 1001–1002 (quoting *Kammerman v. Kammerman,* 543 A.2d 794, 798–99 (D.C. 1988)); *see also Baker v. United States,* 891 A.2d 208, 212–13 (D.C.2006); *In re Marshall,* 445 A.2d 5, 7 (D.C.1982); *Howat v. Kansas,* 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550 (1922). In short, we are satisfied beyond a reasonable doubt that in light of the evidence presented by the government, the designated judge properly convicted Mr. Banks of criminal contempt because of his contemptuous acts and his willful violation of Order # 18, which caused an obstruction of the orderly administration of justice. *Banks III, supra,* 805 A.2d at 1003; *Jones, supra,* 709 A.2d at 723.

Accordingly, for the foregoing reasons, we affirm the order of April 8, 2004, adjudging Mr. Banks guilty of criminal contempt as charged.

*So ordered.*