*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 12-CM-1807, 13-CO-937

BENOIT O. BROOKENS, II, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED **04/05/2018**
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CCC-10-11)

(Hon. José M. López, Trial Judge)

(Argued January 4, 2018                                    Decided April 5, 2018)

*Johnny Barnes*, with whom *Melodie V. Shuler* was on brief, for appellant.

*David P. Saybolt*, with whom *Channing D. Phillips*, United States Attorney at the time the brief was filed, *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Cynthia G. Wright*, Assistant United States Attorneys, were on the brief for appellee.

Before THOMPSON and EASTERLY, *Associate Judges*, and FERREN, *Senior Judge*.

EASTERLY, *Associate Judge*:  Over thirty years ago, in 1986, appellant Benoit Brookens was found guilty of criminal contempt based on his unauthorized practice of law and was permanently enjoined from engaging in specified activities.  In 2011, he was charged with nineteen counts of criminal contempt for

violating the 1986 injunction and was ultimately convicted on four counts. We now reverse. Two of the four contempt counts are barred by the three-year catchall statute of limitations set forth in D.C. Code § 23-113 (a)(5), which we now hold applies to criminal contempt charges brought under D.C. Code § 11-944. The remaining two contempt counts cannot stand because, although the evidence may indicate that Mr. Brookens violated District of Columbia Court of Appeals Rule 49 as amended in 1998, the evidence fails to establish that Mr. Brookens engaged in the contemptuous conduct with which he was actually charged—conduct prohibited by the 1986 injunction.

## I. Facts and Procedural History

### A. The 1986 Contempt Conviction and Injunction

Mr. Brookens has been a member of the bar in other states but has never been licensed to practice law in the District of Columbia. In 1986, he was convicted after a bench trial of criminal contempt based on his unauthorized practice of law in violation of Rule 49. *In re Benoit Brookens*, No. 84-98 (D.C.

Super. Ct. Aug. 1, 1986).[1]  In a Memorandum Opinion, the trial court found that,

Mr. Brookens had "represented persons and organizations other than himself

before the courts of the District of Columbia and before the Rental

Accommodations Office on many occasions, in many different cases," mostly

involving the tenants of Dorchester House, an apartment building in which Mr.

Brookens himself at one point resided.  Based on his representation of others in

court and his broader identification of himself as a lawyer "to the general public,"[2]

the trial court found that Mr. Brookens had "regularly engaged in the practice of

law" in violation of then-Rule 49.[3]  But the trial court distinguished this culpable

---

[1]  Mr. Brookens was tried by a single judge of this court, the Honorable John A. Terry, *see Brookens v. Comm. On Unauthorized Practice of Law*, 538 A.2d 1120, 1121 (D.C. 1988); *see also* D.C. App. R. 49 (d) (1986) (authorizing violations of Rule 49 to "be punishable as contempt and/or subject to injunctive relief" after proceedings conducted "before a judge of this court designated by the chief judge").  Because he functioned as the fact-finder in the 1986 proceeding, we refer to Judge Terry as "the trial court."

[2]  The trial court found that Mr. Brookens' had listed himself as an attorney in the business section of the phone book ("the white pages") and had regularly used stationary with letterhead identifying himself as an attorney.

[3]  In 1986, the "[p]ractice of law in the District of Columbia" was defined in Rule 49 (b), which provided in pertinent part that

> (1) No person shall regularly engage in the practice of law in the District of Columbia or in any manner hold out as authorized or qualified to practice law in the District of Columbia unless enrolled as an active member of the Bar.

(continued…)

conduct from Mr. Brookens's "activities before the Rental Accommodations [O]ffice." The court explained that these activities had to "be considered in a different light" because they were not prohibited by Rule 49:

> Because Rule 49 does not deal with representation of others before [District of Columbia] administrative agencies, and because in this instance [Mr. Brookens's] activities before the Rental Accommodations Office were authorized under the rules of that agency, the court concludes that [Mr. Brookens] has not engaged in the unauthorized practice of law, and has not violated Rule 49, by representing persons other than himself before the Rental Accommodations Office.

---

(…continued)

> (2) No person . . . shall, in the District of Columbia, advise or counsel any person on matters affecting legal rights, or practice or appear as an attorney at law for a person other than such person in any court . . . or hold out to the public as being entitled to practice; or in any other manner assume to be an attorney at law, or assume, or use or advertise the title of lawyer, attorney or counselor, or any equivalent title, in such manner as to convey the impression that such person is entitled to practice law, or in any manner advertise that such person . . . maintains an office for the practice of law in the District of Columbia, without being an enrolled active member of the Bar.

> (3) The practice of law as used in this rule shall include, but is not limited to, appearing for any other person as attorney in any court, or preparing for any other person . . . any pleadings of any kind in any action brought before any court . . . .

D.C. App. R. 49 (1986).

Setting aside his conduct before District agencies, the trial court determined that Mr. Brookens should be penalized for his "past violations of Rule 49 (b), and . . . enjoined from future violations of Rule 49 (b)."  Accordingly, the trial court, in its Judgment and Order, fined Mr. Brookens $300 and "permanently enjoined and prohibited [him] from":

> (1) representing any person other than himself . . . in any court in the District of Columbia unless he is a member of the bar of the court in which such representation takes place; (2) using such terms as "lawyer," "attorney," "counsel," "counselor" or "counsellor," "Esq." or "Esquire" to refer to himself in such manner as to convey the impression that he is entitled or authorized to practice law in the District of Columbia, or in any way holding himself out as authorized or qualified to practice law in the District of Columbia; (3) engaging in any manner in the practice of law in the District of Columbia, as that term is defined in Rule 49 (b)(3) of the General Rules of this court; and (4) engaging in any other conduct prohibited by Rule 49 (b)(2) of the General Rules of this court.

## B.  The Appeal of the 1986 Contempt Conviction and Injunction

Both Mr. Brookens and the Committee on the Unauthorized Practice of Law (CUPL) appealed—Mr. Brookens seeking to overturn the determination that he had violated Rule 49 in any way; the CUPL seeking "reversal of the finding that [Mr.] Brookens'[s] activities before a District of Columbia agency did not

constitute the unauthorized practice of law." *Brookens*, 538 A.2d at 1122. This court affirmed the challenged judgment and order "in all respects." *Id*. at 1127.

Specifically, with respect to the CUPL's appeal, we rejected the argument that Mr. Brookens had engaged in the unauthorized practice of law "as defined in [Rule] 49 (b)," by virtue of his appearances on behalf of clients before District agencies. *Id*. at 1125. We not only upheld agency regulations authorizing nonlawyers "to appear on behalf of clients," *id.*, we also left in place the trial court's determination that "Rule 49 does not deal with representation of others before [District of Columbia] administrative agencies," observing that "[w]hile it is clear that this court is empowered to define the practice of law so that it either excludes or includes lay representation before agencies, it is also true that such an undertaking implicates important public policy questions." *Id*. at 1127. We further noted that "administrative review of [Rule] 49 is currently and formally underway by this court, the affected agencies, and the Committee," and stated that we would not "interrupt the progress that has already been made in solving the apparent conflict between the rules of this court and the regulations of some District of Columbia agencies." *Id.*

## C. The Revision of Rule 49

Rule 49 was eventually revised in 1998. As modified, it governs conduct before District agencies.[4] The definition of the "[p]ractice of law" extends beyond conduct in "court" to include, inter alia, "[p]reparing any . . . pleadings of any kind . . . for filing in *any court, administrative agency or other tribunal*," D.C. App. R. 49 (b)(2)(D) (2017) (emphasis added), and "[a]ppearing or acting as an attorney *in any tribunal*," D.C. App. R. 49 (b)(2)(C) (2017) (emphasis added).

## D. The 2011 Criminal Contempt Prosecution

In April 2011, twenty-five years after the issuance of the 1986 injunction and thirteen years after the revision of Rule 49, the government charged Mr. Brookens with nineteen counts of contempt under D.C. Code § 11-944 (a) (2001),[5] for violating the 1986 injunction. Every count in the information related to his

---

[4] Rule 49 was also reorganized such that a general prohibition against the unauthorized practice of law is now located in section (a) and pertinent definitions are located in section (b). D.C. App. R. 49 (2017).

[5] D.C. Code § 11-944 (a) provides that, "[s]ubject to the limitations [regarding punishment] described in subsection (b), and in addition to the powers conferred by [18 U.S.C. § 402], the Superior Court, or a judge thereof, may punish for disobedience of an order or for contempt committed in the presence of the court."

continued representation of Dorchester tenants before two District of Columbia agencies: the Department of Consumer and Regulatory Affairs (DCRA) and Office of Administrative Hearings (OAH). Ultimately, the government proceeded on only four counts. Two (counts fifteen and sixteen) alleged that Mr. Brookens violated the 1986 injunction by holding himself out as an attorney by signing "Esquire" on two 2005 pleadings he filed with the DCRA. A third (count eighteen) alleged that, "[o]n at least one occasion" between January 1996 and June 2008, Mr. Brookens violated the 1986 injunction by "engaging in the unlawful practice of law in violation of Rule 49 (b)(2)." And, a fourth (count nineteen) alleged that, during the same twelve-year time period, Mr. Brookens violated the 1986 injunction by "representing a person other than himself (specifically Dorchester Tenants and Dorchester Tenants' Association) in the District of Columbia without being a member of the District of Columbia Bar."[6]

---

[6] At oral argument, the government alluded to an earlier effort by the CUPL in 2003 to investigate or prosecute Mr. Brookens for similar conduct. The government subsequently moved to supplement the record with a number of documents mostly comprised of CUPL work product and correspondence, spanning a twelve-year period between 1999 and 2011. The government cited no rationale or authority for our consideration of the proffered material to the extent it falls outside of the appellate record, and, with this opinion, we deny that motion. *See* D.C. App. R. 10 (a) (defining the "record on appeal" to include "(1) the original papers and exhibits filed in the Superior Court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the Clerk of the Superior Court.").

Prior to trial, Mr. Brookens moved to dismiss all four contempt counts. Among other things, he argued that these charges were time-barred by the catchall three-year statute of limitations for criminal misdemeanors set forth in D.C. Code § 23-113 (a)(5) (2001).[7]  He also argued that the 1986 injunction had not prohibited his conduct before administrative agencies and that his conduct was authorized under the agencies' rules.  The trial court denied the motion, concluding that D.C. Code § 23-113 did not apply to contempt charges under D.C. Code § 11-944 and, even if § 23-113 did apply, the charges were brought within three years of Mr. Brookens's "12 years of engaging in criminal contempt."  The court likewise rejected Mr. Brookens's argument that he could not be guilty of contempt because his conduct before administrative agencies was authorized, reasoning that Mr. Brookens "was not charged with the unauthorized practice of law, but with [c]riminal [c]ontempt for violating a restraining order."  The trial court further

---

[7]  Criminal contempt under D.C. Code § 11-944 may be prosecuted as a misdemeanor or a felony.  *See In re Marshall*, 549 A.2d 311, 315 (D.C. 1988) (explaining that "[b]ecause contempt has no statutory penalty limit, . . . we look to the penalty actually imposed" to determine if the defendant was prosecuted for misdemeanor or a felony contempt); *see also Caldwell v. United States*, 595 A.2d 961, 965 (D.C. 1991) (noting "[t]here is no limitation on the length of the sentence for criminal contempt").  At the time Mr. Brookens raised his statute of limitations defense, the trial court had already announced that it would not sentence him on any given count to more than 180 days.

explained its understanding that this court had "permanently enjoined [Mr. Brookens] from representing himself as authorized to practice law in the District of Columbia" and that "[r]egardless of whether he was permitted to represent a client before an administrative agency, he was still enjoined from representing himself as authorized to practice law."

At trial, the government presented evidence that Mr. Brookens had represented Dorchester tenants before District agencies in a number of related cases over a number of years and, inter alia, had signed pleadings identifying himself as counsel and had sought attorney's fees. The government argued that this conduct violated Rule 49. The government relied on the 2008 edition of the rule, a copy of which it submitted to the court over Mr. Brookens's objection that it was not the "proper" Rule 49—i.e., that it was not the operative rule when the 1986 injunction was issued. Mr. Brookens did not meaningfully challenge the government's evidence regarding his particular conduct. Instead, consistent with his motion to dismiss, he argued that his actions were not prohibited by the 1986 injunction and were "authorized" by agency regulations at the time and by various hearing examiners and administrative law judges.[8] As a corollary to this argument,

---

[8] Mr. Brookens argued that District agencies had for years "authorized, encouraged, ordered and supported [him] in representing the [Dorchester] tenants"

(continued…)

Mr. Brookens argued that because he did not understand the injunction to prohibit him from practicing law before agencies, he did not have the requisite intent to willfully violate the injunction.

The trial court found Mr. Brookens guilty on all four counts of contempt, sentenced him to four concurrent sentences (suspended) of 180 days' incarceration, and enjoined him from holding a job "in any capacity, in a District of Columbia law office." This appeal followed.[9]

## II. Analysis

Mr. Brookens raises a myriad of arguments on appeal, but we address only two: his challenge to the criminal contempt charges as time-barred under the District's statute of limitations and his challenge to the sufficiency of the evidence.

_____

(…continued)
and that by the time the agencies started sending contrary signals, he was not representing the tenants anymore.

[9] Mr. Brookens unsuccessfully moved to vacate his conviction on grounds of actual innocence. His appeal of the order denying him relief was consolidated with his direct appeal, but he has made no argument challenging the court's order independent of those challenging his conviction.

## A. Statute of Limitations

Mr. Brookens argues that the trial court erred when it denied his motion to dismiss because all the contempt charges were barred by the three-year catchall statute of limitations for criminal misdemeanors. The government asserts it is an open question whether the District's statute of limitations, D.C. Code § 23-113, applies to prosecutions for contempt under D.C. Code § 11-944 (a). It urges us to hold that it does not and that prosecutions for contempt are only time-barred to the extent that case-specific facts demonstrate unreasonable delay. Our review of this legal issue is de novo. *See Porter v. United States*, 769 A.2d 143, 148 (D.C. 2001).

Statutes of limitations "have long been respected as fundamental to a well-ordered judicial system." *Bd. of Regents v. Tomanio,* 446 U.S. 478, 487 (1980). The time limits they impose "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–49 (1944); *accord Thomas v. United States*, 50 A.3d 458, 469 n.3 (D.C. 2012) (statutes of limitation are intended "to bar efforts to enforce stale claims as to which evidence might be lost or destroyed") (quoting *Hobson v. District of*

*Columbia*, 686 A.2d 194, 198 (D.C. 1996)). They also promote fairness both by allowing parties "to plan for litigation and allocate resources based on realistic predictions," *Bond v. Serano*, 566 A.2d 47, 56 (D.C. 1989) (Farrell, J., concurring), and by granting "repose to defendants when plaintiffs have tarried for an unreasonable amount of time," *Brin v. S.E.W. Inv'rs*, 902 A.2d 784, 799 n.20 (D.C. 2006) (quoting *Helinski v. Appleton Papers*, 952 F. Supp 266, 272 n.3 (D. Md. 1997)). And, as is particularly relevant in this case, statutes of limitations ensure defendants will receive timely notice of the alleged criminality of their conduct. *Cf. Toussie v. United States*, 397 U.S. 112, 121 (1970) (defendant could not be prosecuted for failure to register for the draft eight years after failing to register within a number of days of his eighteenth birthday, rejecting the argument that defendant continued to commit the offense each day thereafter he failed to register until he turned twenty-six because "there is no language in this Act that clearly contemplates a prolonged course of conduct.").

"Every statute of limitations, of course, may permit a rogue to escape." *Pendergast v. United States,* 317 U.S. 412, 418 (1943); *see also Stogner v. California,* 539 U.S. 607, 611 (2003) (describing the statute of limitations as "an amnesty" because "after a certain time" one becomes safe from pursuit or safe to relinquish the proofs of his innocence). Nonetheless, the first United States

Congress deemed limiting the temporal power of the government to prosecute crimes so important that it included a statute of limitations in the Crimes Act of 1790.[10] An Act for the Punishment of Certain Crimes Against the United States, 1 Stat. 112, 119 (1790).[11]

The federal statute of limitations governed criminal actions brought in the District even after the creation of the District's courts, in the absence of local legislation.[12] *See United States v. Brown*, 422 A.2d 1281, 1283 (D.C. 1980) (rejecting the argument that the general federal statute of limitations which had

---

[10] The first Congress also "confirmed the power of federal courts" to punish certain contempts in the Judiciary Act of 1789. Act of Sept. 24, 1789, § 17, 1 Stat. 73; *Green v. United States*, 356 U.S. 165, 179, 186–87 (1958); *see also Bloom v. Illinois*, 391 U.S. 194, 202–03 & n.5 (1968) (discussing provisions in the Judiciary Acts of 1789 and 1831 regarding federal courts' power to punish contempts). *Cf. Ex parte Robinson*, 86 U.S. 505, 510 (1873) (explaining that "[t]he power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice").

[11] The District of Columbia Circuit in *In re Gompers*, 40 App. D.C. 293 (D.C. 1913), was thus correct to say that the first Congress had enacted the first federal statute of limitations for criminal cases, but it was mistaken when it stated this initial statute "was part of the original [J]udiciary [A]ct, passed contemporaneously with the adoption of the Bill of Rights" in 1789. *Id*. at 324.

[12] In addition to the general statutes of limitations for capital offenses (no limit, 18 U.S.C. § 3281) and noncapital offenses (5 years, 18 U.S.C. § 3282), the United States Code included a specific, one-year statute of limitations for contempt in 18 U.S.C. § 3285. *See infra*.

applied to criminal actions in the District's courts before the passage of the District of Columbia Court Reform and Criminal Procedure Act of 1970 did not apply thereafter). The Council passed "the District of Columbia Criminal Statute of Limitations Act," superseding the federal statute, in 1982.[13] Codified as D.C. Code § 23-113, the District's statute of limitations imposed more refined jurisdictional limits on the prosecution of various "crimes" in the District's courts, including a three-year catch-all for unenumerated offenses.[14]

One might wonder why there is any question that criminal contempt, punishable under D.C. Code § 11-944 (a), *supra* note 5, is a "crime" within the meaning of D.C. Code § 23-113. The reason is this court's previous statements that "[a] criminal contempt proceeding is not a criminal prosecution, and consequently not all procedures required in a criminal trial are necessary in a hearing on a charge of contempt." *Beckham v. United States*, 609 A.2d 1122, 1124

---

[13] *See* D.C. Council, Report on Bill 4-121 at 1 (Jan. 13, 1982) ("The purpose of this legislation is to create a local statute of limitations for criminal offenses. Currently, the District of Columbia does not have such a local statute of limitations for criminal actions and instead relies upon the applicable federal law.")

[14] *See* D.C. Code § 23-113 (a)(2)-(5) (providing that the prosecution of referenced crimes "is barred" unless commenced within the specified time period); *see generally United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015) (explaining that time bars are jurisdictional if the legislature clearly states that is their effect).

(D.C. 1992) (citing *In re Wiggins,* 359 A.2d 579, 580 (D.C 1976)). The foundation for this pronouncement was a trio of Supreme Court decisions, cited in *In re Wiggins*, dating back to 1924 and addressing other unsettled procedural issues in contempt cases. 359 A.2d at 581 (citing *Taylor v. Hayes*, 418 U.S. 488 (1974) (right to a jury trial); *Green*, 356 U.S. 165 (sentencing limitations); *Myers v. United States*, 264 U.S. 95 (1924) (venue)). The Supreme Court's decision in *Gompers v. United States*, 233 U.S. 604 (1914), was not cited. *Gompers*, however, addresses the precise question before us—whether criminal contempt prosecuted in District of Columbia courts may be time-barred by a statute of limitations—and it is where our analysis must begin.

The defendants in *Gompers* were convicted of criminal contempt in the Supreme Court of the District of Columbia, the District's trial court at that time.[15] On appeal, they challenged their convictions on the ground that their prosecutions were barred by the federal statute of limitations requiring an indictment to be returned or information to be filed within three years of the commission of the offense. *In re Gompers*, 40 App. D.C. at 297, 319. The District of Columbia

---

[15] *In re Gompers*, 40 App. D.C. at 297; *see also Cross v. United States*, 145 U.S. 571, 572 (1892); *Hernandez v. Banks*, 65 A.3d 59, 61 n.2 (D.C. 2013).

Circuit Court, which provided direct appellate review, rejected this argument. The court reasoned that the federal statute of limitations applied only to those crimes contemplated by the drafters of the Constitution—i.e., those brought by information or indictment and tried by a jury—and within the jurisdiction of the federal courts as defined by Congress. *Id.* at 319–24. The court observed that contempt prosecutions are sui generis, "without any particular form of action," and did not need to be initiated by information or indictment as contemplated by the statute of limitations. *Id.* at 322–23. It further highlighted the common law origins of contempt powers and noted that contempt was not codified as a crime in the United States Code. *Id. But see supra* note 10.

The Supreme Court reversed. *Gompers*, 233 U.S. at 613. The Court first explained that "contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech." *Id.* at 610. The Court then examined the text of the federal statute of limitations and held that it plainly and broadly applied to "any offense," including contempts, and that it did not matter that contempt prosecutions might not be initiated by information or indictment. *Id.* at 611. Finally, the Court observed that even if the federal statute of limitations did not "cover the case by its express words . . . [t]he

power to punish for contempt must have some limit in time, and in defining that limit we should have regard to what has been the policy of the law from the foundation of the government." *Id*. at 612. The Court reasoned that it would be "utterly repugnant to the genius of our laws" to allow individuals charged with contempt to be "tried or punished . . . at any distance of time" from the alleged offense. *Id.* at 613.

Since 1914, the status of contempt as "a crime in the ordinary sense," subject to the same procedural constraints, has been consistently reaffirmed and reinforced in federal and local arenas. *Bloom*, 391 U.S. at 201. In 1948, Congress codified the federal courts' contempt power in 18 U.S.C. §§ 401, 402 (1948). When Congress created the District's court system in 1970, it gave the District's courts equivalent powers to "punish" contempts in D.C. Code § 11-944.[16] And over the years, as this court reviewed prosecutions under D.C. Code § 11-944 (a), we have acknowledged that, "as a matter of fundamental due process," defendants accused of contempt are "entitled to a broad array of procedural protections." *Beckham*,

---

[16] D.C. Code § 11-944 is patterned on 18 U.S.C. § 401, *see* Public Law 91-358 (July 29, 1970); H.R. 16196, 91st Cong., 2d Sess. (Feb. 1970) at 211 (replicating the "powers of enforcement and punishment as provided by section 401 of title 18, United States Code"), and expressly incorporates "the powers conferred by" 18 U.S.C. § 402. *Supra* note 5.

609 A.2d at 1125. In a series of cases, we have held that alleged contemnors, no less than any other class of defendant, are entitled to a "disinterested prosecutor," the presumption of innocence, the privilege against self-incrimination, notice of the charges, and representation by counsel; we have also recognized that alleged contemnors have the right to confront witnesses and to present evidence. *In re Jackson*, 51 A.3d 529, 539–41 (D.C. 2012); *Beckham,* 609 A.2d at 1125; *In re Wiggins*, 359 A.2d at 581, 581 n.5. In so doing, we have effectively acknowledged what is already well-established vis à vis criminal contempt in federal court: "criminal contempt is a crime in every fundamental respect," *Bloom*, 391 U.S. at 201, and it will be the exception not the rule to deny alleged contemnors the procedural protections afforded to all other criminal defendants, *see id.* at 207 (reaffirming "the need for effective safeguards against" the abuse of courts' contempt powers and detailing how "in modern times, procedures in criminal contempt cases have come to mirror those used in ordinary criminal cases").

The government may be technically correct that whether criminal contempt under D.C. Code § 11-944 (a) is a "crime" within the meaning of D.C. Code § 23-113 is an open question. But in light of the foregoing, there is only one permissible answer. Criminal contempt charges prosecuted in Superior Court are "crimes" subject to the jurisdictional limitations of the District's statute of

limitations. We now so hold and thereby align our law with the law in federal court where, for over a century, individuals charged with criminal contempt have been "entitled to the protection of a statute of limitations."[17] *Bloom*, 391 U.S. at 205 n.7; *see also Pendergast*, 317 U.S. at 417–21 (declining to carve out an exception for contempts committed in the presence of the court); *cf. Carrell v. United States*, 165 A.3d 314, 323 (D.C. 2017) (en banc) (relying on the Supreme Court's interpretation of a federal statute to interpret the District's analogous statute).

As criminal contempt under D.C. Code § 11-944 (a) is not one of the enumerated offenses for which limitations periods are set forth under D.C. Code

---

[17] We are unpersuaded by the government's argument against taking this step, which rests entirely on our statement in *Beckham* that "a criminal contempt proceeding is not a criminal prosecution," and a citation to an Alabama Supreme Court decision holding, without any analysis, that contempt charges are only subject to case-specific limits on unreasonable delay. *In re Moody*, 351 So. 2d 538, 543–44 (Ala. 1977).

Nor are we persuaded by the government's post-argument submission to the court citing D.C. Bar. R. XI, § 1 (c): "No statute of limitations: Disciplinary proceedings against an attorney shall not be subject to any period of limitation." That rule governs bar disciplinary proceedings, which are not criminal prosecutions in any sense. *See In re Williams*, 513 A.2d 793, 796 (D.C. 1986) ("A disciplinary sanction differs from a criminal conviction."); *In re Cleaver-Bascombe*, 986 A.2d 1191, 1195 (D.C. 2010) (noting that the purpose of imposing attorney discipline is not to punish).

§ 23-113, the three-year catchall requirement under § 23-113 (a)(5) applies.[18] The government concedes in its brief that if the three-year catchall applies to Mr. Brookens's contempt charges, then counts fifteen and sixteen are time barred. These two counts in the April 2011 information both relate to pleadings filed by Mr. Brookens in 2005 and fall well outside the three-year window for pursuing those charges. Counts eighteen and nineteen survive at least in part. These counts allege that Mr. Brookens engaged in contumacious conduct from January 17, 1996 through June 13, 2008; to the extent they identify actions that took place between April and June 2008, they plead conduct within the three-year statute of limitations.[19]

---

[18] Expressing concern that CUPL proceedings that precede criminal referral to the United States Attorney's Office, *see* Rule 49 (d)(3)(E)(v), are themselves time-consuming, the government suggested for the first time at oral argument, that, if contempt charges based on the unauthorized practice of law are subject to the District's statute of limitations, then the time at which a prosecution can be said to have commenced within the meaning of § 23-113 (c) should be set at some point before the criminal information is filed. We do not, in this case, pursue the government's suggestion. We generally do not consider arguments raised for the first time at oral argument, *George Wash. Univ. v. Waas*, 648 A.2d 178, 182 n.6 (D.C. 1994), and without briefing on this point, we are unable to evaluate whether adjusting the meaning of when a contempt prosecution in the CUPL context has commenced is either warranted or permissible.

[19] We decline the government's invitation to hold more broadly that, even if § 23-113 (a)(5) applies, Mr. Brookens may be prosecuted for all the conduct, spanning a dozen years, referenced in these counts. The government invokes § 23-113 (b) which provides that "if a legislative purpose to prohibit a continuing course of conduct plainly appears" then "[a]n offense is committed . . . at the time when

(continued…)

(…continued)

the course of conduct . . . is terminated." For three reasons, we are unpersuaded that this provision permits the government to seek to prosecute Mr. Brookens for actions taken as many as fifteen years before it charged him with criminal contempt.

First, the government fails to explain how "a legislative purpose to prohibit a continuing course of conduct plainly appears" in D.C. Code § 11-944. *See, e.g.*, *Craig v. United States*, 551 A.2d 440, 440–41 (D.C. 1988) (holding that prison breach was a "continuous offense" because the Supreme Court found the substantially similar federal prison breach offense to be continuous). Looking to the statute, we see nothing in the text that indicates the legislature viewed contempt as a continuous offense. *See Toussie*, 397 U.S. at 115 (explaining that "criminal limitations statutes are to be liberally interpreted in favor of repose" and requiring "explicit" designation as a continuing offense in the "language of the substantive criminal statute . . . or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one").

Second, we see no support for the government's argument in our case law. We acknowledge that we have held that "episodes" of contempt may be charged in a single count. *In re Dixon*, 853 A.2d 708, 711 (D.C. 2004). Even so, we made clear that the sufficiency of the evidence must be assessed for each act individually, as opposed to cumulatively, *id.*, and we have never held that the government may circumvent the statute of limitations by charging multiple instances of contempt collectively. *Cf. United States v. Yashar*, 166 F.3d 873, 877 (7th Cir. 1999) (declining to treat "a continuing course of conduct or scheme the same as a continuing offense under *Toussie*"); *United States v. Sunia*, 643 F. Supp. 2d 51, 70 (D.D.C. 2009) (same).

Third, looking again to federal law, we note that the Supreme Court has held that whether a federal contempt charge is based on in-court misrepresentations of material facts or out-of-court violations of injunctions, "each act so far as it [i]s a contempt, [i]s punishable as such and therefore must be judged by itself." *Pendergast*, 317 U.S. at 420. Accordingly, the Court held in *Pendergast* that the federal offense of contempt cannot be construed as a continuing offense to evade the federal statute of limitations. *Id.* (rejecting the argument that an in-court contempt fell within the statute of limitations because the misrepresentation of material facts had a continuing fraudulent effect and reflected a continuous fraudulent intent).

## B. Sufficiency of the evidence

We turn next to Mr. Brookens's challenge to the sufficiency of the evidence and examine whether the evidence is sufficient to establish that Mr. Brookens is guilty of contempt for violating the 1986 injunction in the manner alleged in the surviving counts. We review sufficiency of the evidence claims de novo to "determine whether the evidence, viewed in the light most favorable to the government, was such that a reasonable [factfinder] could find guilt beyond a reasonable doubt." *In re Ryan*, 823 A.2d 509, 511 (D.C. 2003).

"To establish criminal contempt, the government must prove beyond a reasonable doubt that the defendant willfully disobeyed a court order, causing an obstruction of the orderly administration of justice." *Banks v. United States*, 926 A.2d 158, 164 (D.C. 2007) (internal quotation marks omitted); *see also id*. ("The offense of criminal contempt requires proof of a contemptuous act and a wrongful state of mind."). Counts eighteen and nineteen respectively alleged that Mr. Brookens violated the 1986 injunction "by engaging in the unlawful practice of law in violation of Rule 49 (b)(2)" and by "representing a person other than himself (specifically Dorchester Tenants and Dorchester Tenants' Association) in

the District of Columbia without being a member of the District of Columbia Bar." To substantiate these charges, the government presented evidence that Mr. Brookens filed pleadings with District agencies and represented persons other than himself in those fora. The question before us is whether the court order in question—the 1986 injunction—prohibited this conduct. *See In re Jones*, 51 A.3d 1290, 1293 (D.C. 2012) (reversing contempt conviction where the government presented evidence that the defendant had tested positive for drugs, but "no reading of the [court order defendant was alleged to have violated] expressly or by clear implication required appellant to abstain from use of illegal substances or risk contempt"); *see also supra* Part I.D. (acknowledgment by the trial court that Mr. Brookens was not charged with contempt for violating Rule 49, but rather for "violating a restraining order").

From the inception of this case, Mr. Brookens has consistently argued that the 1986 injunction did not limit his activities before District agencies. In its brief to this court, the government implicitly, and in our view correctly, concedes that, at least at the time it was drafted, the injunction did not extend to Mr. Brookens's representation of others before District agencies. We hold that the injunction must be read in conjunction with the criminal contempt conviction that led to its issuance.

The trial court in 1986 determined that Mr. Brookens was guilty of criminal contempt for practicing law—but only for his representation of others before courts and his identification of himself as a lawyer to the general public. *Supra* Part I.A. Although the government had urged the trial court also to hold Mr. Brookens in contempt based on the representation of others before District agencies, the trial court expressly ruled that Mr. Brookens's actions "must be considered in a different light," because then-Rule 49 "d[id] not deal with" that conduct. Accordingly, the trial court concluded that Mr. Brookens "ha[d] not engaged in the unauthorized practice of law, and ha[d] not violated Rule 49, by representing persons other than himself before [the District's] Rental Accommodations Office." The court then enjoined Mr. Brookens from engaging in conduct which it determined *did* violate then-Rule 49. *See Brookens*, 538 A.2d at 1121 ("Brookens was held in contempt for unauthorized practice of law in the District of Columbia and enjoined from engaging in similar behavior in the future."). But the trial court in 1986 did not enjoin Mr. Brookens from representing others before District agencies.[20]

---

[20] The CUPL appealed the trial court's judgment and order precisely because it disagreed with the court's determination that Rule 49 at that time did not extend to Mr. Brookens's representation of others before District agencies.

(continued…)

The government argues, however, that it is no matter that the 1986 injunction, as issued, did not bar Mr. Brookens from representing others before District administrative agencies because the 1986 injunction must be read in conjunction with Rule 49 as it was amended a dozen years later. *Supra* Part I.C. The government explains that "*at the time of the charged offenses*, Rule 49 had been amended to apply plainly to agency proceedings. *See* Rule 49 (b)(2)(D) (1998)." (emphasis added). According to the government, "[w]hen courts issue injunctions, the injunction applies to conduct 'in futuro,' and thus any change in the law underlying the injunction is reflected in the scope of the injunction." We cannot agree.

It is certainly true, as the government asserts in its brief, that courts "may issue injunctions that expressly incorporate a statutory provision or rule in order to give adequate notice of the prohibited activity." *See, e.g.*, *United States v. Phillip*

---

(…continued)
*Brookens*, 538 A.2d at 1122. Rejecting this challenge, this court decided "to affirm the ruling of the presiding judge . . . in all respects." *Id.* at 1127; *see also In re Banks*, 805 A.2d 990, 1000 (D.C. 2002) (contrasting "the then-current [in 1995] version of Rule 49 [which] did not on its face encompass appearances before administrative agencies" and the rule in effect "now").

*Morris USA*, 566 F.3d 1095, 1136–37 (D.C. Cir. 2009) (incorporating the definition of "racketeering" from the RICO statute). But the fact that courts may do this does not support the government's proposition that any law cited in an injunction is subject to evolving interpretation—as opposed to incorporating the law as it existed at the time the injunction issued. We are unaware of any authority that supports the former contention,[21] and only the latter is consistent with the "basic fairness require[ment] that those enjoined receive explicit notice of precisely what conduct is outlawed" and the recognition that fair notice must be assessed "in the light of the circumstances surrounding (the injunction's) entry." *Id.* at 1137; *accord Jones*, 51 A.3d at 1293 (reaffirming that "constitutional due process requires that [an alleged contemnor] be on notice of the type of conduct that constitutes a violation of the court's order"). If the beneficiary of injunctive relief would like an injunction to incorporate a change in the law, the beneficiary must return to court and seek to have the injunction updated.[22] *Cf. In re Jones*, 51

---

[21]  In addition to *Phillip Morris USA*, which does not support its argument, the government cites to *Am. Steel Foundries v. Tri-City Cent. Trades Council*, 257 U.S. 184 (1921). But in that case, the Supreme Court held only that an injunction challenged on appeal had to be read in conjunction with a statute that had been passed while the appeal was pending and that limited the injunctive relief available. *Id.* at 201.

[22]  For whatever reason, that never happened here. Alternatively, in this case, the government could have sought to prosecute Mr. Brookens for violating Rule 49 as revised in 1998; it did not do that either. Consequently, we do not

(continued…)

A.3d at 1293 ("Before a defendant can be convicted of criminal contempt, constitutional due process requires that he be on notice of the type of conduct that constitutes a violation of the court's order.)

Our conclusion that an injunction incorporating a rule must be read to reflect the rule as it existed at the time the injunction issued finds additional support in *Banks*, 805 A.2d at 999–1000. In that case, the nonlawyer defendant challenged a 1995 injunction, which employed language similar to the 1986 injunction here (prohibiting "otherwise engaging in any manner in the practice of law"), and argued that it "unlawfully prohibit[ed] him from practicing before District of Columbia administrative agencies"—conduct that was not prohibited when the injunction issued. *Id.* This court did not reject the defendant's challenge to the injunction on the ground proffered by the government in this case, i.e., that the injunction evolved as the rule evolved. Instead, we acknowledged that the injunction was limited to the rule as it existed at the time the injunction was issued; and we held that the defendant's "*future* ability to practice before local agencies as

---

(…continued)
necessarily disagree with the trial court that Mr. Brookens "flouted" Rule 49 after it was revised; we hold only that he has not violated the 1986 injunction as the government charged.

a non-lawyer . . . w[ould] be governed[,]" not by the injunction, but "by the current Rule 49." *Id*. at 1000.

With the understanding that we must read the 1986 injunction to mean what it meant when it was issued in 1986, we turn to the surviving counts of contempt for which Mr. Brookens was convicted—counts eighteen and nineteen—to assess whether the evidence was sufficient to sustain each.

The trial court in this case found Mr. Brookens guilty of count eighteen which alleges both that Mr. Brookens was enjoined in 1986 from representing others "unless he is a member of the bar of the court in which such representation takes place" and that he violated the 1986 injunction by "engaging in the unlawful practice of law in violation of Rule 49 (b)(2)." But as discussed above, Rule 49 (and Rule 49 (b)(2) in particular) did not prohibit representing others in front of District agencies; Mr. Brookens was not convicted of contempt in 1986 for such conduct; and the 1986 injunction as issued did not prohibit it. Indeed, in finding Mr. Brookens guilty of contempt for violating the 1986 injunction, the trial court in this case actually cited to the rule as amended and specifically quoted from Rule 49 (b)(2)(D), which states that "[o]ne is presumed to be practicing law when . . .

preparing any . . . written documents containing legal argument or interpretation of law, for filing *in any court, administrative agency or other tribunal*." (emphasis added). But that language was not added to the rule until 1998, *supra* Part I.C., and it cannot be read into the 1986 injunction.[23]

In 1986, Rule 49 (b)(2) did prohibit a person from generally "hold[ing] out to the public as being entitled to practice . . . or us[ing] or advertis[ing] the title of lawyer, attorney or counselor, or any equivalent title," if he was not barred in the District of Columbia, much as Rule 49 (b)(4) does today. *Supra* note 3. And the trial court in 1986, having heard evidence that Mr. Brookens had advertised his services as a lawyer, *supra* note 2, included a specific "holding out" prohibition the 1986 injunction. *Supra* Part I.A. But there is no similar evidence in the current record that Mr. Brookens in 2008 advertised his services as a lawyer, and the

---

[23] The 1986 version of Rule 49 (b) included in its definition of the practice of law "preparing for any other person" various described legal documents, or "any pleadings of any kind in any action brought before any court, or preparing or processing formal opinions or consulting with respect to any of the foregoing or on any other matters of law." D.C. App. R. 49 (b)(3) (1986). And the 1986 injunction barred Mr. Brookens from engaging in conduct in violation of Rule 49 (b)(2) and Rule 49 (b)(3), *supra* Part. I.A. But the CUPL did not charge Mr. Brookens in count eighteen with violating Rule 49 (b)(3), and, as discussed, the 1986 version of Rule 49 did not extend to Mr. Brookens representation of others before agencies which would necessarily encompass filings contemplated by Rule 49 (b)(3).

government's witness, Richard Luchs, counsel for the landlord, testified that Mr. Brookens, having been "told [in 2008] he could only appear on behalf of himself," thereafter only represented himself in agency proceedings. The only potentially culpable conduct we can identify in the record that falls within the limitations period, i.e., after April 2008, is a June 13, 2008, "Praecipe Withdrawing Appearances for Proceedings on The Merits," signed by "Benoit Brookens, Esq." Assuming the 1986 "holding out" prohibition could extend to conduct related to representation of others before agencies that was authorized in 1986, this single filing (presumably submitted because Mr. Brookens knew he had come to the end of the road in his efforts to represent the Dorchester tenants[24]) seems both a de minimis act[25] and insufficient to demonstrate Mr. Brookens knowingly and willfully violated the 1986 injunction by holding himself out as an attorney in violation of Rule 49 (b)(2) as charged in count eighteen.

---

[24] By this time, the OAH ALJ presiding over the Dorchester cases had ruled that Mr. Brookens could not serve as lay representative of other tenants because he had not demonstrated he was a current resident of the property and had ordered "any attorney who seeks to represent parties to this action [to] file a notice of appearance . . . that includes the attorney's District of Columbia Bar number."

[25] *Cf. Smith v. United States*, 677 A.2d 1022, 1027 (D.C. 1996) (noting defendant's acquittal of contempt charge based on de minimis violation of a stay away order).

The trial court in this case also found Mr. Brookens guilty of count nineteen which alleges that he violated the injunction by "representing any person other than himself (specifically the Dorchester Tenants and Dorchester Tenants' Association) in the District of Columbia." Again, the evidence only established that Mr. Brookens represented these other persons in front of agencies and, as discussed above, the injunction did not enjoin him from representing "any person other than himself" in an agency setting because Rule 49 at the time did not extend to such conduct. Indeed, the provision of the injunction that expressly prohibited Mr. Brookens from "representing any person other than himself" only prohibited him from doing so "*in any court* in the District of Columbia." (emphasis added). Moreover, there is no evidence in the record that Mr. Brookens represented individuals other than himself within the statute of limitations period.

In sum, Mr. Brookens's convictions for contempt under counts eighteen and nineteen were premised on his violation of the 1986 injunction, but the evidence within the limitations period did not substantiate a violation of the 1986 order. Because the evidence was legally insufficient to support his convictions on counts eighteen and nineteen, these convictions must be reversed.

## III.  Conclusion

For the reasons set forth above, we conclude that none of Mr. Brookens's convictions for contempt can stand.  Thus we reverse the trial court's judgment in toto.

*So ordered.*